**IN UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN  DIVISION**

| | |
|---|---|
| KEVIN PARNELLA, JOAN KAHN, SHAWN BURKE, DON PICKETT, ELI ADAM, HELYN PALMER, CYNDY THOMPSON individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br>　　vs.<br><br>LUMBER LIQUIDATORS, INC., a Delaware Corporation<br><br>　　　　　Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

For their Class Action Complaint against Defendant, Lumber Liquidators, Inc., a Delaware Corporation ("Defendant" or "Lumber Liquidators"), Plaintiffs Kevin Parnella, Joan Kahn, Shawn Burke, Don Pickett, Eli Adam, Helyn Palmer, and Cyndy Thompson (collectively, "Plaintiffs"), individually and on behalf of the other members of the below-defined Nationwide Class and Statewide Classes they respectively seek to represent (collectively, the "Class"), allege the following, upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, and based upon the investigation made by their counsel.

## NATURE OF THE CASE

1.　　With approximately 1,800 employees and annual revenues exceeding one billion dollars, Lumber Liquidators is the largest and fastest-growing retailer of hardwood flooring in North America.  Lumber Liquidators operates as a multi-channel specialty retailer of hardwood flooring, and hardwood flooring enhancements and accessories, and supervises and controls the manufacturing, packaging, distribution, marketing and/or sales of laminate wood flooring products throughout the United States. As of December 31, 2014, it operated 352 stores in 46 states.  Lumber Liquidators' headquarters and 306,000 square foot production center is located in Toano, Virginia.

2.      Lumber Liquidators sells its products directly to homeowners, or to contractors acting on behalf of homeowners.  It claims to have one of the largest inventories of prefinished and unfinished hardwood floors in the industry.

3.      Lumber Liquidators carries solid and engineered hardwood, laminate flooring, bamboo flooring, cork flooring and resilient vinyl flooring, butcher blocks, molding, accessories and tools.

4.      Even though Lumber Liquidators is based in the United States, it supervises and controls the manufacturing of laminate wood flooring products from several manufacturing plants in China which are sold by Lumber Liquidators to consumers across the United States through various sales channels, such as in stores, via a toll-free customer service telephone line, and Lumber Liquidators' website.

5.      Lumber Liquidators has been knowingly selling Chinese-manufactured laminate wood flooring products that emit dangerous and unlawfully high levels of formaldehyde.  The emissions levels far exceed the maximum allowed by the California Air Resources Board ("CARB") and pose a serious health risk to those exposed to the emissions.  CARB's standards are promulgated in California's Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products ("CARB Measure").

6.       Lumber Liquidators also falsely labels its laminate wood flooring products manufactured in China as being compliant with CARB's formaldehyde emission standards.  Lumber Liquidators has advertised on its website that its products are "safe and meet the highest quality and environmental standards."[1]  As a result, Plaintiffs and the Class have been purchasing laminate wood flooring products manufactured in China from Lumber Liquidators that is unsafe and should not be distributed or sold in the United States.

---

[1] Cal. Code Regs. tit. 17, §§ 93120-93120.12.

7.      Laminate wood flooring is generally comprised of a base layer of pressed composite wood (particle board or medium-density fiberboard), which is a mixture of sawdust or wood particles bonded together with glue or resin.  The CARB Measure classifies medium density fiberboard as either "MDF," which has a thickness of greater than 8 mm, or "Thin MDF," which has a thickness of 8 mm or less.[2]

8.      Formaldehyde is an organic compound commonly used in the glue found in the base layer of laminate flooring.  At room temperature, formaldehyde forms into a gas.  When present at sufficient levels, formaldehyde emanates from flooring over time.

9.      The State of California has deemed formaldehyde to be a toxic substance. Long-term exposure to formaldehyde, among other things, increases the risk of cancer of the nose and sinuses, nasopharyngeal and oropharyngeal cancer, lung cancer, and leukemia.  Formaldehyde can also cause burning eyes, nose and throat irritation, coughing, headaches, dizziness, joint pain and nausea.  It has been linked to the exacerbation of asthma in formaldehyde-sensitive individuals and poses a particular acute risk to children.

10.      Lumber Liquidators knowingly and intentionally engaged in a scheme to source, manufacture, sell, and distribute to consumers across the United States, falsely advertised Chinese-manufactured laminate wood flooring products that emits dangerously and unlawfully high levels of formaldehyde.

11.      From October 2013 through November 2014, three certified and accredited laboratories tested the formaldehyde emissions of laminate wood flooring purchased from home improvement retailers, such as Home Depot, Lowe's, and Lumber Liquidators.

12.      Of the dozens of products tested, the highest formaldehyde levels were found in laminate wood flooring products manufactured in China and sold by Lumber Liquidators.  Sample laminate wood flooring products manufactured in the United

---

[2] Cal. Code Regs. tit. 17, §§ 93120.

States had acceptable levels of formaldehyde emissions.  However, according to the results, the average level of formaldehyde in Lumber Liquidators' laminate wood flooring products manufactured in China was six to seven times above the California standard.  Some products were almost 20 times above California's formaldehyde limit.  As set forth in detail below, each sampled product failed to meet the standards mandated by the CARB.

13.     Lumber Liquidators failed to warn consumers about the dangerous formaldehyde levels in its laminate wood flooring products manufactured in China.  Instead, they falsely label its laminate wood flooring products manufactured in China as being compliant with the strict formaldehyde emission standards set out by the CARB.  Lumber Liquidators also advertises that its products "meet the most stringent environmental and quality standards," and that they require all of its suppliers to "comply with California's advanced environmental requirements, even for products sold outside California."[3]

14.     On March 1, 2015, the television show "60 Minutes" aired a story that reported the findings of an independent investigation into Lumber Liquidators' laminate wood flooring products.

15.     Investigators purchased 31 boxes of Lumber Liquidators' laminate wood flooring manufactured in China, from stores in Virginia, Florida, Texas, Illinois, and New York, and sent the samples for testing to two certified labs.[4]  Of the 31 samples, one was CARB compliant for formaldehyde, while others were more than 13 times the California limit.[5]  Both labs stated, "they had never seen formaldehyde levels that high."[6]

---

[3] Lumberliquidators.com, http://www.lumberliquidators.com/sustainability/health-and-safety/?WT.ad=GLOBAL_FOOTER_Quality (last visited on March 4, 2015).
[4] http://www.cbsnews.com/news/lumber-liquidators-linked-to-health-and-safety-violations/ (last visited on March 4, 2015).
[5] *Id.*
[6] *Id.*

16.     "60 Minutes" also sent its investigators undercover to the City of Changzhou, the laminate flooring capital of the world.  Using hidden cameras, these investigators, posing as buyers, visited three different mills that manufacture laminate wood flooring for Lumber Liquidators.

17.     According to the "60 Minutes" report:

> Employees at the mills openly admitted that they use core boards with higher levels of formaldehyde to make Lumber Liquidators laminates, saving the company 10-15 percent on the price.  At all three mills, they also admitted falsely labeling the company's laminate flooring as CARB 2, meaning it meets California formaldehyde emissions standards, and the new U.S. federal law.[7]

18.     Lumber Liquidators failed to provide Plaintiffs and other members of the Class any warning about the dangerous formaldehyde levels its laminate wood flooring products manufactured in China emits.  Instead, it falsely labels, and represents on its website and its warranties that its laminate wood flooring products comply with strict CARB formaldehyde standards.

19.     Lumber Liquidators has made false and misleading statements on its website, such as, "we not only comply with laws-we exceed them."  "Highest Quality Flooring.  Guaranteed."[8]



---

[7] *Id*.

[8] http://www.lumberliquidators.com/ll/flooring/quality?WT.ad=GLOBAL_FOOTER_Quality (last visited on March 6, 2015, via Internet Archive screen capture from July 4, 2014)

20.     Plaintiffs and members of the Class purchased and installed Lumber Liquidators' laminate wood flooring products labeled as being CARB compliant which were manufactured in China and were found to have formaldehyde levels that are dangerous and unlawful.

21.     Plaintiffs seek to represent themselves and a class of others, defined below, who purchased Lumber Liquidators laminate wood flooring products labeled as CARB compliant, which were manufactured in China  and sold to consumers across the United States at any time through the date of judgment herein.

## JURISDICTION AND VENUE

22.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because members of the proposed Plaintiff Class are citizens of states different from Defendants' home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

23.     This Court has personal jurisdiction over Defendant because it operates retail stores, sells products to customers in, and otherwise conducts substantial business in this state, and some of the actions giving rise to the Complaint took place in this state.

24.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, and the Defendant has caused harm to class members residing in this District.

## PARTIES

### Plaintiffs

25.     Plaintiff Kevin Parnella is, and at all relevant times has been, a resident of Plano, Texas.  In or around December 2013, he purchased Dream Home 8 mm Nirvana Royal Mahogany Laminate Flooring at a Lumber Liquidators store located in Plano, Texas.

26.     Plaintiff Joan Kahn is, and at all relevant times has been, a resident of Denver, Colorado.  In or around January 2015, she purchased 12 mm Dream Home

Kensington Manor Warm Springs Chestnut Laminate Flooring at a Lumber Liquidators store located in Littleton, Colorado.

27.     Plaintiff Shawn Burke is, and at all relevant times has been, a resident of Port Barrington, Illinois.  In or around October 2014, he purchased 12 mm Dream Home St. James Chimney Rock Charcoal Laminate Flooring at a Lumber Liquidators store located in Crystal Lake, Illinois.

28.     Plaintiff Don Pickett is, and at all relevant times has been, a resident of Wilkes-Barre Township, Pennsylvania.  In or around July 2012, he purchased 12 mm Dream Home St. James Vitner's Reserve Laminate Flooring at a Lumber Liquidators store located in Wilkes-Barre, Pennsylvania.

29.     Plaintiff Eli Adam, is, and at all relevant times has been, a resident of Jacksonville, Florida.  In or around February 2015, he purchased 12 mm Dream Home St. James Blacksburg Barn Board Laminate Flooring at a Lumber Liquidators store located in Jacksonville, Florida.

30.     Plaintiff Helyn Palmer is, and at all relevant times has been, a resident of Charleston, South Carolina.  In or around March 2014, she purchased 12 mm Dream Home Kensington Manor Sandy Hills Hickory Laminate Flooring at a Lumber Liquidators store located in Charleston, South Carolina.

31.     Plaintiff Cyndy Thompson is, and at all relevant times has been, a resident of Harpers Ferry, West Virginia.  In or around August 2013 and March 2015, she purchased 12 mm Dream Home Kensington Manor Golden Teak Laminate Flooring at a Lumber Liquidators store located in Martinsburg, West Virginia.

## Defendants

32.     Defendant Lumber Liquidators, Inc. is a Delaware corporation with its headquarters and principal place of business in Toano, Virginia.  Lumber Liquidators, Inc. distributes, markets, and/or sells laminate wood flooring products across the United States.

33.     Lumber Liquidators, Inc. is one of the largest specialty retailers of hardwood flooring in the United States.  As of December 31, 2014, it operated 352 stores in 46 states.  It sells primarily to homeowners directly, or to contractors purchasing on behalf of homeowners.

## FACTUAL BACKGROUND

A.     **Formaldehyde and California's Formaldehyde Standard**

34.     On January 1, 1988, the State of California officially listed Formaldehyde (gas) as a chemical known to cause cancer.

35.     On March 2, 1993, the CARB formally identified formaldehyde as a Toxic Air Contaminant in California with no safe level of exposure. [9]

36.     In April 2007, CARB approved the Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products ("CARB Measure"). This measure took effect January 2009, and set decreasing limits in two Phases.  Cal. Code Regs., tit. 17, § 93120.2(a).

37.     The CARB Measure applies to composite wood ("laminate") products, such as flooring.  Cal Code. Regs., tit. 17 § 93120.2(a).

38.     The CARB Measure applies to manufacturers, third party certifiers, distributors, importers, fabricators, and retailers of hardwood plywood ("HWPW"), particleboard ("PB"), and medium density fiberboard ("MDF").  The purpose of the measure is to reduce formaldehyde emissions from composite wood products, and finished goods that contain composite wood products, that are sold, offered for sale, supplied, used, or manufactured for sale in California.[10]

39.     Under Phase 1 of the CARB Measure, which was in effect from January 1, 2009 through December 31, 2010, formaldehyde emissions for MDF flooring products, like the ones at issue in this action, were limited to .21 parts per million ("ppm").  Phase 2, which took effect on January 1, 2011, limited formaldehyde emissions on those same

---

[9] Cal. Code Regs. tit. 17, § 93000.
[10] Cal. Code Regs. tit. 17, § 93120.

MDF flooring products to 0.11 ppm. Phase 1 for Thin MDF flooring products, like the ones at issue in this action, which was in effect from January 1, 2009 through December 31, 2011, limited formaldehyde emissions to 0.21 ppm. Phase 2 for those same Thin MDF flooring products, which took effect on January 1, 2012, lowered the formaldehyde emission standard to 0.13 ppm.[11] (All references to formaldehyde emission standards for both MDF and Thin MDF flooring products will now be referred to as the "CARB limit.").

**B.** **Lumber Liquidators' Laminate Wood Flooring Products**

40. Lumber Liquidators supervises and/or controls the manufacturing and packaging of laminate wood flooring products in China that is distributed, marketed, and/or sold across the United States. Those laminate wood flooring products contain formaldehyde and emit formaldehyde gas at levels that exceed, and sometimes grossly exceed, the CARB limit. Those laminate wood flooring products include the following:

      a.    8 mm Dream Home Nirvana Royal Mahogany Laminate Flooring;

      b.    8 mm Dream Home Nirvana French Oak Laminate Flooring;

      c.    12 mm Dream Home Ispiri Poplar Forest Oak Laminate Flooring;

      d.    12 mm Dream Home Kensington Manor Antique Bamboo Laminate Flooring;

      e.    12 mm Dream Home St. James Oceanside Plank Laminate Flooring;

      f.    12 mm Dream Home Kensington Manor Warm Springs Chestnut Laminate Flooring;

      g.    15 mm Dream Home St. James Sky Lakes Pine Laminate Flooring;

      h.    12 mm Dream Home Kensington Manor Imperial Teak Laminate Flooring;

      i.    12 mm Dream Home St. James Vintner's Reserve Laminate Flooring;

---

[11] Cal. Code Regs., tit. 17, § 93120.2(a).

j.      12 mm Dream Home Kensington Manor Cape Doctor Laminate Flooring;

k.      12 mm Dream Home St. James Golden Acacia Laminate Flooring;

l.      12 mm Dream Home Kensington Manor Sandy Hills Hickory Laminate Flooring;

m.      12 mm Dream Home Kensington Manor Tanzanian Wenge Laminate Flooring;

n.      12 mm Dream Home Ispiri America's Mission Olive Laminate Flooring;

o.      12 mm Dream Home Kensington Manor Golden Teak Laminate Flooring;

p.      12 mm Dream Home Kensington Manor Summer Retreat Teak Laminate Flooring;

q.      12 mm Dream Home Kensington Manor Glacier Peak Poplar Laminate Flooring;

r.      12 mm Dream Home St. James Brazilian Koa Laminate Flooring;

s.      12 mm Dream Home St. James Blacksburg Barn Board Laminate Flooring;

t.      12 mm Dream Home St. James Nantucket Beech Laminate Flooring;

u.      12 mm Dream Home St. James African Mahogany Laminate Flooring;

v.      12 mm Dream Home St. James Chimney Rock Charcoal Laminate Flooring;

w.      12 mm Dream Home Kensington Manor Fumed African Ironwood Laminate Flooring; and,

x.      12 mm Dream Home St. James Cumberland Mountain Oak Laminate Flooring.

41.     The CARB Measure applies to all of the above-mentioned flooring products.

42.     On information and belief, each of Lumber Liquidators' laminate wood flooring products listed above are manufactured in China using a common formula, design or process.

43.     On information and belief, each of Lumber Liquidators' laminate wood flooring products listed above emit formaldehyde gas at levels that exceed the CARB limit.

## LUMBER LIQUIDATORS MISREPRESENTS THAT ITS LAMINATE WOOD FLOORING PRODUCTS MEET CALIFORNIA'S FORMALDEHYDE EMISSION STANDARDS

44.     Despite the dangerous and unlawful levels of formaldehyde emissions from its laminate wood flooring products manufactured in China, Lumber Liquidators misrepresents to consumers on its website, product packaging, and warranties that its laminate wood flooring products meet the strict CARB standards for formaldehyde emissions.  For example, Lumber Liquidators' website poses the following questions with answers:

> Is Lumber Liquidators Compliant with the California law?
> **Laminate and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified by a Third Party Certifier approved by the State of California to meet the CARB standards.** The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their products conform to the specified regulation limits. The Third Party Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified.
> Does CARB only apply to California?
> Though it currently applies only to products sold in California, **Lumber Liquidators made a decision to require all of our**

> **vendors to comply with the California Air Resources Board regulations regardless of whether we intended to sell the products in California or any other state/country.** <u>What extra steps does Lumber Liquidators take to ensure compliance?</u>
>
> In addition to the California Air Resources Board requirements, **Lumber Liquidators regularly selects one or more finished products from each of its suppliers and Ω**

45.     In response to the "60 Minutes" investigative report, Lumber Liquidators' Founder & Chairman released a letter, in which he made the following statements:

> Let me make one thing very clear—our laminate products, all of our products, are 100% safe.
>
> We comply with applicable regulations regarding our products, including California standards for formaldehyde emissions for composite wood products – the most stringent rules in the country. We take our commitment to safety even further by employing compliance personnel around the world and utilizing the latest in cutting- edge technology to provide our customers with top quality and high value flooring.
>
> As recently as late 2014, testing by independent third parties confirmed that 100 percent of the randomly selected cores used in the laminates from the three factories that 60 Minutes investigated came back as fully safe and compliant with California standards.[12]

46.     In addition, the product packaging for Lumber Liquidators' laminate wood flooring states:  "CARB . . . CALIFORNIA 93120 Phase 2 Compliant Formaldehyde." On information and belief, this statement is presented on all of Defendant's laminate flooring product packaging regardless of whether the flooring inside the packaging complies with the CARB standards.

47.     Lumber Liquidators' purchase orders come with a warranty stating, among other things, that "all goods furnished or supplied . . . have been sourced, produced,

---

[12] http://www.lumberliquidators.com/sustainability/60-minutes-letter-from-tom/ (last visited on March 4, 2015).

sold, delivered, declared, packaged, labeled, manufactured, and/or rendered to Lumber Liquidators in compliance with all applicable laws, codes and regulations."[13]

48.     As alleged throughout this Complaint, Lumber Liquidators fails to warn consumers about the dangerous and unlawful formaldehyde emissions emitting from its laminate wood flooring products manufactured in China.  Instead, Lumber Liquidators uses Third Party Certifiers to approve its flooring products to meet the strict CARB standards.

<u>Regulations and Lumber Liquidators' Compliance</u>

The California Air Reform Bill (CARB) requires that products containing Hardwood Plywood Veneer Core (HWP-VC), Hardwood Plywood Composite Core (HWP-CC), Particleboard and MDF be tested for emissions and products not meeting the strict standards for emissions may not be sold in California.

The Environmental Protection Agency has drafted national standards for formaldehyde emissions in composite wood products that are similar to those of California. Those standards have not yet been enacted.

All laminates and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified by a Third Party Certifier approved by the State of California to meet the CARB standards. The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their products conform to the specified formaldehyde emission limits. The Third Party Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified.

Though it currently applies only to products sold in California, Lumber Liquidators made a decision to require all of our suppliers to comply with CARB regardless of whether we intended to sell the products in California or any other state/country. In addition, our suppliers manufacture their products in accordance with the European standard, which has stricter guidelines than the California.

In addition to the CARB requirements, Lumber Liquidators regularly selects one or more products from each of its suppliers and submits them for independent third-party lab testing. This is done as a monitoring activity to validate

---

[13] Purchase Order Terms and Conditions, http://www.lumberliquidators.com/ll/customer-care/potc800201 (last visited on March 4, 2015).

ongoing compliance.[14]

49.     Lumber Liquidators materially misrepresents the safety of its laminate wood flooring products manufactured in China by advertising that these products are compliant with the CARB limit when in fact they are not.

50.     Lumber Liquidators makes the material omission of failing to tell consumers that they are buying laminate wood flooring products that emits dangerous and unlawful levels of formaldehyde.

51.     Lumber Liquidators' laminate wood flooring products have been sold for personal use throughout the United States for over four years.

52.     Lumber Liquidators continues to distribute and sell its Chinese-manufactured laminate wood flooring products to customers throughout the United States, with the representation that its product is CARB complaint, even though it is not.

## LUMBER LIQUIDATORS KNOWINGLY MISREPRESENTS THE SAFETY OF ITS LAMINATE WOOD FLOORING PRODUCTS

53.     On information and belief, at all times relevant to this action, Lumber Liquidators knowingly misrepresented to Plaintiffs and members of the Class that its laminate wood flooring products manufactured in China were CARB compliant.

54.     On information and belief, at all times relevant to this action, Lumber Liquidators knowingly failed to disclose to consumers the dangerous and unlawful levels of formaldehyde emissions from its laminate wood flooring products manufactured in China.

55.     Lumber Liquidators has falsely represented in its public statements to consumers that its laminate wood flooring products manufactured in China is sourced from mills whose production methods are CARB compliant and conform to CARB's strict formaldehyde emission limits.

---

[14] http://www.lumberliquidators.com/ll/flooring/Flooring101-formaldehyde-what-is-it (last visited on March 6, 2015, via Internet Archive screen capture from July 4, 2014).

56.     Contrary to its public statements, Lumber Liquidators acknowledged in statements made to the Securities and Exchange Commission that, "While our suppliers agree to operate in compliance with applicable laws and regulations, including those relating to environmental and labor practices, we do not control our suppliers.  Accordingly, we cannot guarantee that they comply with such laws and regulations or operate in a legal, ethical and responsible manner.  Violation of environmental, labor or other laws by our suppliers or their failure to operate in a legal, ethical and responsible manner, could . . . expose us to legal risks as a result of our purchase of product from non-compliant suppliers."[15]

57.     Even with its concern that suppliers might not comply with environmental regulations, Lumber Liquidators has still failed to sufficiently exercise its acknowledged quality control over those suppliers to ensure that they comply with CARB's strict formaldehyde emission standards, and continues to sell laminate wood flooring products that it obtains from those suppliers.

58.     On June 20, 2013, *Seeking Alpha* published an article documenting high formaldehyde levels in laminate flooring manufactured in China and sold by Lumber Liquidators.  The article was supported by tests from a certified laboratory of sample laminate wood flooring products purchased from Lumber Liquidators.  According to the article, the tested product, Mayflower 5/16" x 5 Bund Birch Engineered, emitted three and half times over the government mandated maximum emission level.  Even though these samples were not CARB compliant, Lumber Liquidators had them labeled as CARB compliant.[16]

59.     On information and belief, high formaldehyde content resins and glues are cheaper and dry more quickly than low formaldehyde glues and resins.  By using high

---

[15] Lumber Liquidators February 19, 2014 10-K to the United States Securities and Exchange Commission at p. 14, http://investors.lumberliquidators.com/index.php?o=25&s=127.
[16] Xuhua Zhou, *Illegal Products Could Spell Big Trouble At Lumber Liquidators*, Seeking Alpha (June 20, 2013), http://seekingalpha.com/article/1513142-illegal-products-could-spell-big-trouble-at-lumber-liquidators (last visited on March 4, 2015).

formaldehyde content resins and glues, Lumber Liquidators' Chinese manufacturers are able to produce laminate wood flooring more quickly and at higher volumes, thereby reducing costs and generating greater profits for Defendant.

60.    Numerous customers of Defendant have posted internet complaints concerning formaldehyde emissions, including Deborah of North Fork, California who posted on the Consumer Affairs website on September 11, 2014:

> We spent thousands of dollars and went with the LL recommended professional installer… the product we were sold was supposedly Made in the USA--nope, China. One of my children cannot walk barefoot on the floor because he will blister from the formaldehyde content. We saved for years for this floor, it will need to be replaced. Please RUN to another dealer. This company does not care about the customer one bit. This has been a devastating blow to our family. Consumer Complaints & Reviews, http://www.Consumeraffairs.com/homeowners/lumber_liquid ators.html  on December 2, 2014.)

61.    Based on the above-referenced lawsuits, investigations, and published articles, Lumber Liquidators knew or should have known that its laminate wood flooring products manufactured in China failed to comply CARB's strict formaldehyde emission standards.  Even with this knowledge, Lumber Liquidators failed to bring its laminate wood flooring products up to CARB standards, or disclose to Plaintiffs and members of the Class that its products emit dangerous and unlawful levels of formaldehyde.  Instead, Lumber Liquidators has sold and continues to sell laminate wood flooring products throughout the United States, that exceeds the CARB limit and it has continually represented to consumers that those same products are CARB compliant.

## **FACTS RELATING TO NAMED PLAINTIFFS**

### **Plaintiff Kevin Parnella**

62.    In or around December 2013, Kevin Parnella purchased 8 mm Dream Home Nirvana Royal Mahogany Laminate Flooring at a Lumber Liquidators store located in Plano, Texas.

63.    Plaintiff Parnella relied on Lumber Liquidators' representations that the laminate wood flooring product he purchased was CARB compliant.  He would not have purchased the product absent this representation.

64.    At the time Plaintiff Parnella purchased the laminate wood flooring product, Defendant's representation that its laminate wood flooring products were CARB compliant was false.  Defendant failed to inform him that the laminate wood flooring product he purchased exceeded the strict formaldehyde standards set by the CARB.

**Plaintiff Joan Kahn**

65.    In or around January 2015,  Plaintiff Joan Kahn purchased 12 mm Dream Home Kensington Manor Warm Springs Chestnut Laminate Flooring at a Lumber Liquidators store located in Littleton, Colorado.

66.    Plaintiff Kahn relied on Lumber Liquidators' representations that the laminate wood flooring product she purchased was CARB compliant.  She would not have purchased the product absent this representation.

67.    At the time Plaintiff Kahn purchased the laminate wood flooring product, Defendant's representation that its laminate wood flooring products were CARB compliant was false.  Defendant failed to inform her that the laminate wood flooring product she purchased exceeded the strict formaldehyde standards set by the CARB.

**Plaintiff Shawn Burke**

68.    In or around October 2014, Plaintiff Shawn Burke purchased 12 mm Dream Home St. James Chimney Rock Charcoal Laminate Flooring at a Lumber Liquidators store located in Crystal Lake, Illinois.

69.     Plaintiff Burke relied on Lumber Liquidators' representations that the laminate wood flooring product he purchased was CARB compliant.  He would not have purchased the product absent this representation.

70.     At the time Plaintiff Burke purchased the laminate wood flooring product, Defendant's representation that its laminate wood flooring products were CARB compliant was false.  Defendant failed to inform him that the laminate wood flooring product he purchased exceeded the strict formaldehyde standards set by the CARB.

**Plaintiff Don Pickett**

71.      In or around July 2012, Don Pickett purchased 12 mm Dream Home St. James Vitner's Reserve Laminate Flooring at a Lumber Liquidators store located in Wilkes Barre, Pennsylvania.

72.     Plaintiff  Don Pickett relied on Lumber Liquidators' representations that the laminate wood flooring product he purchased was CARB compliant.  He would not have purchased the product absent this representation.

73.     At the time Plaintiff  Don Pickett  purchased the laminate wood flooring product, Defendant's representation that its laminate wood flooring products were CARB compliant was false.  Defendant failed to inform him that the laminate wood flooring product he purchased exceeded the strict formaldehyde standards set by the CARB.

**Plaintiff Eli Adam**

74.     In or around February 2015, Eli Adam purchased 12 mm Dream Home St. James Blacksburg Barn Board Laminate Flooring at a Lumber Liquidators store located in Jacksonville, Florida.

75.     Plaintiff  Eli Adam relied on Lumber Liquidators' representations that the laminate wood flooring product he purchased was CARB compliant.  He would not have purchased the product absent this representation.

76.     At the time Plaintiff  Eli Adam  purchased the laminate wood flooring product, Defendant's representation that its laminate wood flooring products were

CARB compliant was false.  Defendant failed to inform him that the laminate wood flooring product he purchased exceeded the strict formaldehyde standards set by the CARB.

### Plaintiff Helyn Palmer

77.    In or around March 2014, Plaintiff Helyn Palmer purchased 12 mm Dream Home Kensington Manor Sandy Hills Hickory Laminate Flooring at a Lumber Liquidators store located in Charleston, South Carolina.

78.    Plaintiff Palmer relied on Lumber Liquidators' representations that the laminate wood flooring product she purchased was CARB compliant.  She would not have purchased the product absent this representation.

79.    At the time Plaintiff Palmer purchased the laminate wood flooring product, Defendant's representation that its laminate wood flooring products were CARB compliant was false.  Defendant failed to inform her that the laminate wood flooring product she purchased exceeded the strict formaldehyde standards set by the CARB.

### Plaintiff Cyndy Thompson

80.    In or around August 2013 and March 2015, Plaintiff Cyndy Thompson purchased 12 mm Dream Home Kensington Manor Golden Teak Laminate Flooring at a Lumber Liquidators store located in Martinsburg, West Virginia.
Plaintiff Thompson relied on Lumber Liquidators' representations that the laminate wood flooring product she purchased was CARB compliant.  She would not have purchased the product absent this representation

81.    At the time Plaintiff Thompson purchased the laminate wood flooring product, Defendant's representation that its laminate wood flooring products were CARB compliant was false.  Defendant failed to inform her that the laminate wood flooring product she purchased exceeded the strict formaldehyde standards set by the CARB.

## CLASS ACTION ALLEGATIONS

82.    Plaintiffs bring this action as a class action under Federal Rule of Civil

Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of themselves and all others similarly situated.  Plaintiffs seek to represent a class (the "Nationwide Class") initially defined as:

> All persons in the United States of America who, at any time through the disposition of this action, purchased for their personal use from Lumber Liquidators, one or more laminate wood flooring products that were manufactured in China and advertised as CARB compliant.

83.     Additionally, Plaintiffs seek to represent the following statewide class (the "Statewide Class") defined as follows:

a.      All persons in the State of Texas who, at any time through the disposition of this action, purchased for their personal use from Lumber Liquidators, one or more laminate wood flooring products that were manufactured in China and advertised as CARB compliant.

b.      All persons in the State of Colorado who, at any time through the disposition of this action, purchased for their personal use from Lumber Liquidators, one or more laminate wood flooring products that were manufactured in China and advertised as CARB compliant.

c.      All persons in the State of Illinois who, at any time through the disposition of this action, purchased for their personal use from Lumber Liquidators, one or more laminate wood flooring products that were manufactured in China and advertised as CARB compliant.

d.      All persons in the State of  Pennsylvania who, at any time through the disposition of this action, purchased for their personal use from Lumber Liquidators, one or more laminate wood flooring products that were manufactured in China and advertised as CARB compliant.

e.      All persons in the State of Florida who, at any time through the disposition of this action, purchased for their personal use from Lumber Liquidators,

one or more laminate wood flooring products that were manufactured in China and advertised as CARB compliant.

        f.       All persons in the State of South Carolina who, at any time through the disposition of this action, purchased for their personal use from Lumber Liquidators, one or more laminate wood flooring products that were manufactured in China and advertised as CARB compliant.

        g.       All persons in the State of West Virginia who, at any time through the disposition of this action, purchased for their personal use from Lumber Liquidators, one or more laminate wood flooring products that were manufactured in China and advertised as CARB compliant.

84.    Excluded from the Nationwide and Statewide Class is Defendant, its affiliates and subsidiaries, Defendant's current or former employees, officers, directors, agents, representatives, their family members, government entities, members of this Court and its staff.  Plaintiffs reserve the right to amend the definition of the class if discovery or further investigation reveals that the class should be expanded or otherwise modified.

85.    During the Class Period, Class Members purchased laminate wood flooring products from Defendant that were falsely advertised as being compliant with CARB standards, when instead, the flooring products emitted dangerous and unlawful levels of formaldehyde, which Defendant failed to disclose.

86.    **Numerosity and impracticality of joinder.**  The members of the Nationwide and Statewide Class are so numerous that joinder of all members is impractical.  Millions of Nationwide and Statewide Class members purchased laminate wood flooring products manufactured in China.  The members of the Nationwide and Statewide Class are easily and readily identifiable from information and records in Defendants possession, custody, or control.

87.    **Commonality and predominance.**  There are common questions of law and fact that predominate over any questions affecting the individual members of the

Nationwide and Statewide Class.  Common legal and factual questions include, but are not limited to:

a.      Whether Lumber Liquidators properly and adequately monitored its Chinese manufacturing plants to ensure CARB compliance;

b.      Whether Lumber Liquidators' laminate wood flooring products that were manufactured in China and sold throughout the United States, including California, exceed the CARB limit;

c.      Whether Lumber Liquidators falsely labeled and advertised its laminate wood flooring products that were manufactured in China as being CARB compliant;

d.      Whether any false representations regarding CARB compliance were made knowingly and willfully;

e.      Whether Lumber Liquidators concealed and omitted material facts from its communications with and disclosure to Plaintiffs, members of the Nationwide Class, and members of all Statewide classes, regarding the levels of formaldehyde in its laminate wood flooring products;

f.      Whether Lumber Liquidators' false representations that its laminate wood flooring products comply with the CARB limit have the likelihood or tendency to deceive or confuse the public;

g.      Whether Lumber Liquidators' representations that its laminate wood flooring products comply with the CARB limit are misleading;

h.      Whether Lumber Liquidators' representations that its laminate wood flooring products comply with the CARB limit are likely to deceive reasonable consumers;

i.      Whether Lumber Liquidators' representations that its laminate wood flooring products comply with the CARB limit are material, as judged by an objective standard;

j.      Whether Plaintiffs, members of the Nationwide Class, and members of all Statewide classes are entitled to damages; and

k.      Whether Plaintiffs, members of the Nationwide Class, and members of all Statewide classes are entitled to equitable relief or other relief, and the nature of such relief.

88.     **Typicality.**  Plaintiffs' claims are typical of the claims of the other Nationwide and Statewide Class members because Plaintiffs and the other Nationwide and Statewide Class members purchased from Defendant laminate wood flooring products that were manufactured in China and emit dangerous and unlawful levels of formaldehyde.  Neither Plaintiffs nor the other Nationwide and Statewide Class members would have purchased laminate wood flooring products from Defendant had they known that the products would emit dangerous and unlawful levels of formaldehyde.  The dangerous and unlawful levels of formaldehyde emissions pose an unreasonable risk of harm to Plaintiffs and the other Nationwide and Statewide Class members.  Plaintiffs and the other Nationwide and Statewide Class members suffered damages as a direct proximate result of the wrongful practices that Defendant engages in.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other Nationwide and Statewide Class members.  Plaintiffs' claims are based upon the same legal theories as the claims of the other Nationwide and Statewide Class members.

89.     **Adequacy.**  Plaintiffs will fully and adequately protect the interests of the other members of the Nationwide and Statewide Class and have retained class counsel who are experienced and qualified in prosecuting class actions, including consumer class actions and other forms of complex litigation.  Neither Plaintiffs nor their counsel have interests that conflict with the interests of the other Nationwide and Statewide Class members.

90.     **Declaratory and Injunctive Relief.**  Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the

Nationwide and Statewide Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Nationwide and Statewide Class members as a whole.

91.     **Superiority.**  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because, among other things: it is economically impracticable for members of the Nationwide and Statewide Class to prosecute individual actions; prosecution as a class action will eliminate the possibility of repetitious and redundant litigation; and, a class action will enable claims to be handled in an orderly, and expeditious manner.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of the Magnuson-Moss Warranty Act**
**15 U.S.C. §§ 2301, *et seq*.**
**(Brought on behalf of the Nationwide Class against Defendants)**

92.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

93.     Plaintiffs bring this Claim on behalf of the Nationwide Class ("Class," for the purposes of this Claim).

94.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

95.     Plaintiffs and members of the Nationwide Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

96.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

97.     The Chinese-manufactured laminate wood flooring materials are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

98.     15 U.S.C. §2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

99.    Defendant's express warranties and written affirmations of fact regarding the nature of its Chinese-manufactured laminate wood flooring products, *i.e.*, that its flooring was compliant with the formaldehyde standards promulgated by the CARB, constitutes a written warranty  within the meaning of the Magnusnon-Moss Warranty Act, 15 U.S.C. § 2301(6).

100.    Defendant breached its warranties by manufacturing, selling and/or distributing its laminate wood flooring products that exceed the CARB limits for formaldehyde emissions, or by making affirmative representations regarding its compliance with the formaldehyde standards promulgated by the CARB, without knowledge of its truth.

101.    By breaching its warranties, Defendant deprived Plaintiffs and the other members of the Nationwide Class of the benefit of their bargains.

102.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

103.    Defendant has been notified of its breach of written warranties and has failed to adequately cure those breaches.

104.    As a direct and proximate result of Defendant's breaches of its written warranties, Plaintiffs and other members of the Nationwide Class seek all damages permitted by law, in an amount to be proven at trial.

**SECOND CLAIM FOR RELIVE**
**Violations of the Deceptive Trade Practices Act**
**Tex. Bus. & Com. Code § 17.41, *et seq*.**
**(Brought on behalf of the Texas Statewide Class against Defendants)**

105.    Plaintiff Kevin Parnella hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

106.    Plaintiff Kevin Parnella brings this Claim on behalf of the Texas Statewide Class.

107.    Plaintiffs and Defendant are each "persons" as defined by Tex. Bus &
Com. Code § 17.45(3).  Defendant's laminate wood flooring products are "goods" under
Tex. Bus & Com. Code § 17.45(1).  Plaintiff and the other Texas Statewide Class
members are "consumers" as defined in Tex. Bus & Com. Code § 17.45(4).  Defendant
has at all relevant times engaged in "trade" and "commerce" as defined in Tex. Bus. &
Com. Code § 17.45(6), by advertising, offering for sale, selling, leasing, and/or
distributing its laminate wood flooring products in Texas, directly or indirectly affecting
Texas citizens through that trade and commerce.

108.    The allegations set forth herein constitute false, misleading, or deceptive
trade acts or practices in violation of Texas's Deceptive Trade Practices-Consumer
Protection Act ("DTPA"), Tex. Bus. & Com. Code § 17.41, *et seq.*

109.    Defendant engaged in deceptive business practices prohibited by the DTPA
by (a) falsely representing that its laminate wood flooring products manufactured in
China comply with CARB standards for formaldehyde emissions, when they fail to
meet these standards; (b) falsely representing that its laminate wood flooring products
manufactured in China have been certified by independent entities to comply with
CARB formaldehyde standards; and (c) failing to disclose that its laminate wood
flooring products manufactured in China emit formaldehyde at dangerous and unlawful
levels, posing a serious health risk to consumers; (d)representing that its laminate wood
flooring products manufactured in China have characteristics, uses, benefits, and
qualities which they do not have; (e) representing that its laminate wood flooring
products manufactured in China are of a particular standard, quality, and grade when
they are not; (f) advertising its laminate wood flooring products manufactured in China
with the intent not to sell them as advertised; and (g) engaging in acts or practices which
are otherwise unfair, misleading, false or deceptive to the consumer.

110.    As alleged above, Defendant made numerous material statements about the
benefits and characteristics of its laminate wood flooring products manufactured in

China that were either false or misleading.  Each of these statements contributed to the deceptive context of Defendant's unlawful advertising and representations as a whole.

111.   Defendant knew that its laminate wood flooring products manufactured in China were defectively designed or manufactured, would fail without warning, and were not suitable for their intended use.  Defendant nevertheless failed to warn Plaintiffs about these defects despite having a duty to do so.

112.   Defendant owed Plaintiffs a duty to disclose the defective nature of its laminate wood flooring systems manufactured in China, because Defendant:

a.   Possessed exclusive knowledge of the defects rendering its laminate wood flooring products manufactured in China more unreliable than similar laminate wood flooring products;

b.   Intentionally concealed the defects associated with its laminate wood flooring products manufactured in China through its deceptive advertising campaign that it designed to hide the defects in its laminate wood flooring products;

c.   Made incomplete representations about the characteristics and performance of its laminate wood flooring products manufactured in China generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

113.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true performance and characteristics of its laminate wood flooring products manufactured in China.

114.   Defendant's intentional concealment of and failure to disclose the defective nature of its laminate wood flooring products manufactured in China to Plaintiff and the other members of the Texas Statewide Class constitutes an "unconscionable action or course of action" under Tex. Bus. & Com. Code § 17.45(5) because, to the detriment of Plaintiff and the other Class members of the Texas Statewide Class, that conduct took advantage of their lack of knowledge, ability, and experience to a grossly unfair degree. That "unconscionable action or course of action" was a producing cause of the

economic damages sustained by Plaintiff and the other members of the Texas Statewide Class.

115.   All procedural prerequisites, including notice, have been met.  The giving of notice to Defendant is rendered impracticable pursuant to Tex. Bus & Com. Code § 17.505(b) and unnecessary because Defendant has notice of the claims against it through the numerous complaints filed against the company.  Pursuant to Tex. Bus. & Com. Code § 17.505(b), Plaintiff, individually and on behalf of the other members of the Texas Statewide Class, will send to the Texas Consumer Protection Division a copy of this Complaint.

116.   Plaintiffs and the other members of the Texas Statewide Class sustained damages as a result of Lumber Liquidators' unlawful acts and are, therefore, entitled to damages and other relief as provided under the DTPA.

117.   Plaintiffs and the other members of the Texas Statewide Class should be awarded three times the amount of their economic damages because Defendant intentionally concealed and failed to disclose the defective nature of its laminate wood flooring products manufactured in China.

### THIRD CLAIM FOR RELIEF
**Breach of Express Warranty**
**(Brought on behalf of the Texas Statewide Class against Defendant)**

118.   Plaintiff Kevin Parnella hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

119.   Plaintiff Kevin Parnella brings this Claim on behalf of the Texas Statewide Class.

120.   Throughout the Class Period, Defendant has expressly warranted that its laminate wood flooring products comply with CARB formaldehyde standards and all other applicable laws and regulations.

121.   Defendant's express warranty that its laminate wood flooring products comply with the CARB standards appears on every package of laminate wood flooring Defendant sells or has sold in Texas, including to Plaintiff Kevin Parnella and the other

members of the Texas Statewide Class.  This express warranty also appears on Defendant's website, product invoices, and instruction materials.

122.   Defendant's warranties became part of the basis of the bargain in selling laminate wood flooring products to Plaintiff Kevin Parnella and the other members of the Texas Statewide Class.

123.   Defendant breached these express warranties by selling, and/or distributing the laminate wood flooring products, which fail to comply with CARB standards.

124.   Plaintiff Kevin Parnella and the other members of the Texas Statewide Class paid money for the laminate wood flooring and paid to have the flooring installed in their homes, work, and other spaces.  However, Plaintiff Kevin Parnella and the other members of the Texas Statewide Class did not obtain the full value of the advertised products.  If Plaintiff Kevin Parnella and the other members of the Texas Statewide Class had known the true nature of Defendant's laminate wood flooring products, including, but not limited to, that the product emitted dangerous and unlawful levels of formaldehyde, they would not have purchased the products.

125.   As a result of this breach, Plaintiff Kevin Parnella and the other members of the Texas Statewide Class suffered injury and deserve to be compensated for the damages they suffered.

126.   Plaintiff Kevin Parnella and the other members of the Texas Statewide Class are therefore entitled to recover compensatory damages, and other relief as specifically prayed herein.

### FOURTH CLAIM FOR RELIEF
**Fraudulent Concealment**
**(Brought on behalf of the Texas Statewide Class against Defendant)**

127.   Plaintiff Kevin Parnella hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

128.   Plaintiff Kevin Parnella brings this Claim on behalf of the Texas Statewide Class.

129.   Defendant intentionally concealed the nature of its laminate wood flooring products manufactured in China, and the above-described material safety information, or acted with reckless disregard for the truth, and denied Plaintiff Kevin Parnella and other members of the Texas Statewide Class information that is highly relevant to their purchasing decision concerning the laminate wood flooring products.

130.   Through advertisements and other forms of communication, Defendant, represented that its laminate wood flooring products manufactured in China comply with CARB standards for formaldehyde emissions, when they fail to meet these standards; represented that the laminate wood flooring products manufactured in China have been certified by independent entities to comply with CARB formaldehyde standards; and, failed to disclose to consumers that the laminate wood flooring products manufactured in China emit formaldehyde at dangerous and unlawful levels, posing a serious health risk to consumers.

131.   Defendant knew these representations were false when made.

132.   Plaintiff Kevin Parnella and other members of the Texas Statewide Class were unaware that Defendant's representations were false.

133.   The laminate wood flooring products purchased by Plaintiff Kevin Parnella and other members of the Texas Statewide Class were, in fact, defective, unsafe, and unreliable, because, among other things, the products emit formaldehyde at dangerous and unlawful levels, posing a serious health risk to consumers.

134.   Plaintiff Kevin Parnella and other members of the Texas Statewide Class reasonably relied upon Defendant to disclose the dangerous and unlawful nature of its laminate wood flooring products, as was their right.

135.   The aforementioned concealment was material because had it been disclosed, Plaintiff Kevin Parnella and other members of the Texas Statewide Class would not have bought the products.

136.   The aforementioned representations, omissions, and concealment were material because they were facts typically relied upon by a person purchasing laminate wood flooring products.

137.   As a proximate result of Defendant's concealment, Plaintiff Kevin Parnella and other members of the Texas Statewide Class have been injured in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### Unjust Enrichment
### (Brought on behalf of the Texas Statewide Class against Defendant)

138.   Plaintiff Kevin Parnella hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

139.   Plaintiff Kevin Parnella brings this Claim on behalf of the Texas Statewide Class.

140.   Defendant profited unjustly from the sale of its laminate wood flooring products manufactured in China as a result of concealing its knowledge that its laminate wood flooring products did not comply with CARB standards for formaldehyde emissions; concealing its knowledge that its laminate wood flooring products manufactured in China had not been certified by independent entities to comply with CARB formaldehyde standards; and, by failing to disclose that its laminate wood flooring products manufactured in China emit formaldehyde at dangerous and unlawful levels, posing a serious health risk to consumers.

141.   As a proximate result of its wrongful acts and omissions described herein, and as a result of its ill-gotten benefits and profits, Defendant has been unjustly enriched at the expense of Plaintiff Kevin Parnella and the other members of the Texas Statewide Class.

142.   The circumstances as described herein are such that it would be inequitable for Defendant to retain these ill-gotten benefits and profits without paying the value thereof to Plaintiff Kevin Parnella and the other members of the Texas Statewide Class.

143.   Plaintiff Kevin Parnella and the other members of the Texas Statewide Class are entitled to restitution of the amount of Defendant's ill-gotten gains, benefits and profits, including interest, resulting from its unlawful, unjust and inequitable conduct, as described above.

144.   Accordingly, Plaintiff Kevin Parnella and the other members of the Texas Statewide Class seek an order establishing Defendant as constructive trustee of the gains, benefits and profits that served to unjustly enrich Defendant, together with interest during the period in which Defendant has retained such benefits and profits, and requiring Defendant to disgorge those profits to Plaintiff Kevin Parnella and the other members of the Texas Statewide Class in a manner to be determined by the Court.

## SIXTH CLAIM FOR RELIEF
### Violation of the Colorado Consumer Protection Act
### Col. Rev. Stat. § 6-1-101, *et seq.*
### (Brought on behalf of the Colorado Statewide Class against Defendant)

145.   Plaintiff Joan Kahn hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

146.   Plaintiff Joan Kahn brings this Claim on behalf of the Colorado Statewide Class.

147.   Defendant is a "person" as defined under the Colorado Consumer Protection Act ("CCPA").  Colo. Rev. Stat. § 6-1-102(6).

148.   Plaintiff Joan Kahn is a "consumer" under the CCPA.

149.   The laminated wood flooring products that are the subject of this action are "goods" under the CCPA.

150.   Defendant engaged in deceptive and misleading trade practices when, in the course of its business Defendant, among other acts and practices:

      a.   Knowingly made false representations as to the characteristics, uses and benefits of its laminate wood flooring products manufactured in China.

      b.   Represented that its laminate wood flooring products manufactured in China were of a particular standard, quality, or grade, or that they were of a particular

style or model, when it knew or should have known that they were of another;

      c.     Advertised the Chinese-manufactured laminate wood flooring products manufactured in China with intent not to sell it as advertised;

      d.     Advertised or otherwise represented that its laminate wood flooring products manufactured in China were warranted when, under normal conditions, the warranties could not be practically fulfilled or which were for such a period of time or were otherwise of such a nature as to have had the capacity and the tendency to mislead purchasers or prospective purchasers into believing that its laminate wood flooring products manufactured in China had a greater degree of quality, safety, and reliability than was true in fact; and

      e.     Failed to disclose material information concerning its laminate wood flooring products manufactured in China, including, its emission of formaldehyde at dangerous and unlawful levels.  Defendant knew this information at the time of advertising and sale, all of which was intended to induce customers to purchase its laminate wood flooring products.

151.   Defendant's conduct significantly impacts the public as actual or potential consumers of its laminate wood flooring products manufactured in China because, upon information and belief, and as will be borne out through discovery, Defendant sold laminate wood flooring products manufactured in China in the State of Colorado, the consumers who purchased the laminate wood flooring products were unsophisticated, the consumers who purchased the laminate wood flooring products had no bargaining power, and the dangerous and unlawful levels of formaldehyde emitting from its laminate wood flooring products manufactured in China impacted consumers and has significant potential to do so in the future.

152.   Additionally, this is a matter of public concern, and the state has a strong interest in protecting purchasers from the conduct in which Defendant engaged.

153.   Plaintiff Joan Kahn and the other Colorado Statewide Class members suffered injury-in-fact to their legally protected interest under the CCPA to purchase

goods without being subjected to deceptive trade practices.

154.   Plaintiff Joan Kahn and the other Colorado Statewide Class members' injuries were proximately caused by Defendant's deceptive trade practices set forth above.

### SEVENTH CLAIM FOR RELIEF
#### Breach of Express Warranty
#### (Brought on behalf of the Colorado Statewide Class against Defendant)

155.   Plaintiff Joan Kahn hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

156.   Plaintiff Joan Kahn brings this Claim on behalf of the Colorado Statewide Class.

157.   Throughout the Class Period, Defendant has expressly warranted that its laminate wood flooring products comply with CARB formaldehyde standards and all other applicable laws and regulations.

158.   Defendant's express warranty that its laminate wood flooring products comply with the CARB standards appears on every package of laminate wood flooring Defendant sells or has sold in Colorado, including to Plaintiff Joan Kahn and the other members of the Colorado Statewide Class.  This express warranty also appears on Defendant's website, product invoices, and instruction materials.

159.   Defendant's warranties became part of the basis of the bargain in selling laminate wood flooring products to Plaintiff Joan Kahn and the other members of the Colorado Statewide Class.

160.   Defendant breached these express warranties by selling, and/or distributing the laminate wood flooring products, which fail to comply with CARB standards.

161.   Plaintiff Joan Kahn and the other members of the Colorado Statewide Class paid money for the laminate wood flooring and paid to have the flooring installed in their homes, work, and other spaces.  However, Plaintiff Joan Kahn and the other members of the Colorado Statewide Class did not obtain the full value of the advertised products.  If Plaintiff Joan Kahn and the other members of the Colorado Statewide Class

had known the true nature of Defendant's laminate wood flooring products, including, but not limited to, that the product emitted dangerous and unlawful levels of formaldehyde, they would not have purchased the products.

162.   As a result of this breach, Plaintiff Joan Kahn and the other members of the Colorado Statewide Class suffered injury and deserve to be compensated for the damages they suffered.

163.   Plaintiff Joan Kahn and the other members of the Colorado Statewide Class are therefore entitled to recover compensatory damages, and other relief as specifically prayed herein.

## EIGHTH CLAIM FOR RELIEF
### Fraudulent Concealment
### (Brought on behalf of the Colorado Statewide Class against Defendant)

164.   Plaintiff Joan Kahn hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

165.   Plaintiff Joan Kahn brings this Claim on behalf of the Colorado Statewide Class.

166.   Defendant intentionally concealed the nature of its laminate wood flooring products manufactured in China, and the above-described material safety information, or acted with reckless disregard for the truth, and denied Plaintiff Joan Kahn and other members of the Colorado Statewide Class information that is highly relevant to their purchasing decision concerning the laminate wood flooring products.

167.   Through advertisements and other forms of communication, Defendant, represented that its laminate wood flooring  products manufactured in China comply with CARB standards for formaldehyde emissions, when they fail to meet these standards; represented that the laminate wood flooring products manufactured in China have been certified by independent entities to comply with CARB formaldehyde standards; and, failed to disclose to consumers that the laminate wood flooring products manufactured in China emit formaldehyde at dangerous and unlawful levels, posing a serious health risk to consumers.

168.   Defendant knew these representations were false when made.

169.   Plaintiff Joan Kahn and other members of the Colorado Statewide Class were unaware that Defendant's representations were false.

170.   The laminate wood flooring products purchased by Plaintiff Joan Kahn and other members of the Colorado Statewide Class were, in fact, defective, unsafe, and unreliable, because, among other things, the products emit formaldehyde at dangerous and unlawful levels, posing a serious health risk to consumers.

171.   Plaintiff Joan Kahn and other members of the Colorado Statewide Class reasonably relied upon Defendant to disclose the dangerous and unlawful nature of its laminate wood flooring products, as was their right.

172.   The aforementioned concealment was material because  had it been disclosed, Plaintiff Joan Kahn and other members of the Colorado Statewide Class would not have bought the products.

173.   The aforementioned representations, omissions, and concealment were material because they were facts typically relied upon by a person purchasing laminate wood flooring products.

174.   As a proximate result of Defendant's concealment, Plaintiff Joan Kahn and other members of the Colorado Statewide Class have been injured in an amount to be proven at trial.

## NINTH CLAIM FOR RELIEF
### Unjust Enrichment
### (Brought on behalf of the Colorado Statewide Class against Defendant)

175.   Plaintiff Joan Kahn hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

176.   Plaintiff Joan Kahn brings this Claim on behalf of the Colorado Statewide Class.

177.   Defendant profited unjustly from the sale of its laminate wood flooring products manufactured in China as a result of concealing its knowledge that its laminate wood flooring products did not comply with CARB standards for formaldehyde

emissions; concealing its knowledge that its laminate wood flooring products manufactured in China had not been certified by independent entities to comply with CARB formaldehyde standards; and, by failing to disclose that its laminate wood flooring products manufactured in China emit formaldehyde at dangerous and unlawful levels, posing a serious health risk to consumers.

178.   As a proximate result of its wrongful acts and omissions described herein, and as a result of its ill-gotten benefits and profits, Defendant has been unjustly enriched at the expense of Plaintiff Joan Kahn and the other members of the Colorado State Class.

179.   The circumstances as described herein are such that it would be inequitable for Defendant to retain these ill-gotten benefits and profits without paying the value thereof to Plaintiff Joan Kahn and the other members of the Colorado State Class.

180.   Plaintiff Joan Kahn and the other members of the Colorado State Class are entitled to restitution of the amount of Defendant's ill-gotten gains, benefits and profits, including interest, resulting from its unlawful, unjust and inequitable conduct, as described above.

181.   Accordingly, Plaintiff Joan Kahn and the other members of the Colorado State Class seek an order establishing Defendant as constructive trustee of the gains, benefits and profits that served to unjustly enrich it, together with interest during the period in which Defendant has retained such benefits and profits, and requiring Defendant to disgorge those profits to Plaintiff Joan Kahn and the other members of the Colorado State Class in a manner to be determined by the Court.

## TENTH CLAIM FOR RELIEF
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act 815 Ill. Comp. Stat. Ann. 505/1, *et seq*.**
**(Brought on behalf of the Illinois Statewide Class against Defendant)**

182.   Plaintiff Shawn Burke hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

183.   Plaintiff Shawn Burke brings this Claim on behalf of the Illinois Statewide

Class.

184. The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2 prohibits unfair or deceptive acts or practices in connection with any trade or commerce, including, among other things, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, . . . whether any person has in fact been misled, deceived, or damaged thereby." The Act also prohibits suppliers from representing that its goods are of a particular quality or grade they are not.

185. The laminate wood flooring products at issue are "merchandise" as that term is defined in the Act, 815 Ill. Comp. Stat. 505/1(b).

186. Defendant is a "person" as that term is defined in the Act, 815 Ill. Comp. Stat. 505/1(c).

187. Plaintiff Shawn Burke and the other members of the Illinois Statewide Class are "consumers" as that term is defined in the Act. 815 Ill. Comp. Stat. 505/1(e).

188. The conduct of Defendant, as set forth herein, including but not limited to, falsely representing that its laminate wood flooring products manufactured in China comply with CARB standards for formaldehyde emissions, when they fail to meet these standards; falsely representing that its laminate wood flooring products manufactured in China have been certified by independent entities to comply with CARB formaldehyde standards; and, that its laminate wood flooring products manufactured in China emit formaldehyde at dangerous and unlawful levels, posing a serious health risk to consumers.

189. The aforementioned conduct constitutes an unfair and deceptive act or practice.

190. Defendant intended for Plaintiff Shawn Burke and the other members of the Illinois Statewide Class to rely on its aforementioned unfair and deceptive acts and practices, and such unfair and deceptive acts and practices occurred in the course of conduct involving trade or commerce.

191.   As a result of the foregoing wrongful conduct of Defendant, Plaintiff Shawn Burke and the other members of the Illinois Statewide Class have been damaged in an amount to be proven at trial, including, but not limited to, actual damages, and reasonable costs and attorneys' fees pursuant to 815 Ill. Comp. Stat. 505/1, et seq.

192.   Defendant's conduct in this regard was wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiff Shawn Burke and the other members of the Illinois Statewide Class and, as such, warrants the imposition of punitive damages.

193.   815 Ill. Comp. Stat. 505/7 permits the Court to enter injunctive relief to require Ford to stop the unfair and deceptive conduct alleged herein.

## ELEVENTH CLAIM FOR RELIEF
### Breach of Express Warranty
**(Brought on behalf of the Illinois Statewide Class against Defendant)**

194.   Plaintiff Shawn Burke hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

195.   Plaintiff Shawn Burke brings this Claim on behalf of the Illinois Statewide Class.

196.   Throughout the Class Period, Defendant has expressly warranted that its laminate wood flooring products comply with CARB formaldehyde standards and all other applicable laws and regulations.

197.   Defendant's express warranty that its laminate wood flooring products comply with the CARB standards appears on every package of laminate wood flooring Defendant sells or has sold in Illinois, including to Plaintiff Shawn Burke and the other members of the Illinois Statewide Class.  This express warranty also appears on Defendant's website, product invoices, and instruction materials.

198.   Defendant's warranties became part of the basis of the bargain in selling laminate wood flooring products to Plaintiff Shawn Burke and the other members of the Illinois Statewide Class.

199.   Defendant breached these express warranties by selling, and/or distributing the laminate wood flooring products, which fail to comply with CARB standards.

200.   Plaintiff Shawn Burke and the other members of the Illinois Statewide Class paid money for the laminate wood flooring and paid to have the flooring installed in their homes, work, and other spaces.  However, Plaintiff Shawn Burke and the other members of the Illinois Statewide Class did not obtain the full value of the advertised products.  If Plaintiff Shawn Burke and the other members of the Illinois Statewide Class had known the true nature of Defendant's laminate wood flooring products, including, but not limited to, that the product emitted dangerous and unlawful levels of formaldehyde, they would not have purchased the products.

201.   As a result of this breach, Plaintiff Shawn Burke and the other members of the Illinois Statewide Class suffered injury and deserve to be compensated for the damages they suffered.

202.   Plaintiff Shawn Burke and the other members of the Illinois Statewide Class are therefore entitled to recover compensatory damages, and other relief as specifically prayed herein.

## TWELFTH CLAIM FOR RELIEF
### Fraudulent Concealment
### (Brought on behalf of the Illinois Statewide Class against Defendant)

203.   Plaintiff Shawn Burke hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

204.   Plaintiff Shawn Burke brings this Claim on behalf of the Illinois Statewide Class.

205.   Defendant intentionally concealed the nature of its laminate wood flooring products manufactured in China, and the above-described material safety information, or acted with reckless disregard for the truth, and denied Plaintiff Shawn Burke and other members of the Illinois Statewide Class information that is highly relevant to their purchasing decision concerning the laminate wood flooring products.

206.   Through advertisements and other forms of communication, Defendant, represented that its laminate wood flooring products manufactured in China comply with CARB standards for formaldehyde emissions, when they fail to meet these

standards; represented that the laminate wood flooring products have been certified by independent entities to comply with CARB formaldehyde standards; and, failed to disclose to consumers that the flooring products emit formaldehyde at dangerous and unlawful levels, posing a serious health risk to consumers.

207.   Defendant knew these representations were false when made.

208.   Plaintiff Shawn Burke and other members of the Illinois Statewide Class were unaware that Defendant's representations were false.

209.   The laminate wood flooring products purchased by Plaintiff Shawn Burke and other members of the Illinois Statewide Class were, in fact, defective, unsafe, and unreliable, because, among other things, the products emit formaldehyde at dangerous and unlawful levels, posing a serious health risk to consumers.

210.   Plaintiff Shawn Burke and other members of the Illinois Statewide Class reasonably relied upon Defendant to disclose the dangerous and unlawful nature of its laminate wood flooring products, as was their right.

211.   The aforementioned concealment was material because had it been disclosed, Plaintiff Shawn Burke and other members of the Illinois Statewide Class would not have bought the products.

212.   The aforementioned concealment was material because had it been disclosed, Plaintiff Shawn Burke and other members of the Illinois Statewide Class would not have bought the products.

213.   As a proximate result of Defendant's concealment, Plaintiff Shawn Burke and other members of the Illinois Statewide Class have been injured in an amount to be proven at trial.

## THIRTEENTH CLAIM FOR RELIEF
### Unjust Enrichment
### (Brought on behalf of the Illinois Statewide Class against Defendant)

214.   Plaintiff Shawn Burke hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

215.   Plaintiff Shawn Burke brings this Claim on behalf of the Pennsylvania

Statewide Class.

216. Defendant profited unjustly from the sale of its laminate wood flooring products manufactured in China as a result of concealing its knowledge that its laminate wood flooring products did not comply with CARB standards for formaldehyde emissions; concealing its knowledge that its laminate wood flooring products manufactured in China had not been certified by independent entities to comply with CARB formaldehyde standards; and, by failing to disclose that its laminate wood flooring products manufactured in China emit formaldehyde at dangerous and unlawful levels, posing a serious health risk to consumers.

217. As a proximate result of its wrongful acts and omissions described herein, and as a result of its ill-gotten benefits and profits, Defendant has been unjustly enriched at the expense of Plaintiff Shawn Burke and other members of the Illinois Statewide Class.

218. The circumstances as described herein are such that it would be inequitable for Defendant to retain these ill-gotten benefits and profits without paying the value thereof to Plaintiff Shawn Burke and other members of the Illinois Statewide Class.

219. Plaintiff Shawn Burke and other members of the Illinois Statewide Class are entitled to restitution of the amount of Defendant's ill-gotten gains, benefits and profits, including interest, resulting from its unlawful, unjust and inequitable conduct, as described above.

220. Accordingly, Plaintiff Shawn Burke and other members of the Illinois Statewide Class seek an order establishing Defendant as constructive trustee of the gains, benefits and profits that served to unjustly enrichment, together with interest during the period in which Defendant has retained such benefits and profits, and requiring Defendant to disgorge those profits to Plaintiff Shawn Burke and other members of the Illinois Statewide Class in a manner to be determined by the Court.

## FOURTEENTH CLAIM FOR RELIEF
### Violation of Pennsylvania's Unfair Trade Practices
### and Consumer Protection Law
### 73 P.S. § 201-1, *et seq.*
### (Brought on behalf of the  Pennsylvania Statewide Class against Defendant)

221.   Plaintiff  Don Pickett hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

222.   Plaintiff  Don Pickett brings this Claim on behalf of the  Pennsylvania Statewide Class.

223.    Plaintiff Don Picket and members of the Pennsylvania Statewide Class are "person[s] who purchase[d] or lease[d] goods . . . primarily for personal, family or household purposes," as required under 73 P.S. § 201-9.2(a).  Defendant is a "person" as defined in 73 P.S. § 201-2(2).

224.   By failing to disclose and actively concealing the fact that its laminate wood flooring manufactured in China does not comply with CARB standards for formaldehyde emissions and, in fact, emit formaldehyde at dangerous and unlawful levels, Defendant engaged in "unfair or deceptive acts or practices" prohibited by the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), including: (1) "[c]ausing likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods," (73 P.S. § 201-2(4)(ii)); (2) "[r]epresenting that goods . . .  have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have," (*id.* § 201-2(4)(v)); (3) "[r]epresenting that goods . . . are of a particular standard, quality or grade . . . if they are of another," (*id.* § 201-2(4)(vii)); (4) "[a]dvertising goods . . . with intent not to sell them as advertised," (*id.* § 201-2(4)(ix)); and (5) "[e]ngaging in . . . deceptive conduct which creates a likelihood of confusion or misunderstanding," (*id.* § 201-2(4)(xxi)).

225.   Defendant knew that its laminate wood flooring manufactured in China did not comply with CARB standards for formaldehyde emissions, that its laminate wood flooring products had not been certified by independent entities to comply with CARB formaldehyde standards, and, that its flooring products emit formaldehyde at dangerous

and unlawful levels, posing a serious health risk to consumers.  Nevertheless, Defendant failed to adequately disclose and remedy this issue.

226.   Defendant owed Plaintiff  Don Pickett and the other members of the Pennsylvania Statewide Class a duty to disclose the defective nature of its laminate wood flooring products manufactured in China because Defendant: possessed exclusive knowledge of the defects rendering its laminate wood flooring products inherently more dangerous and unreliable than similar laminate wood flooring products; intentionally concealed the defects in its laminate wood flooring products manufactured in China from Plaintiff  Pennsylvania and the other members of the  Pennsylvania Statewide Class; and/or made incomplete representations about the quality, safety, and reliability of its laminate wood flooring products manufactured in China, while purposefully withholding material facts from Plaintiff  Don Pickett and the other members of the Pennsylvania Statewide Class that contradicted those representations.

227.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff  Don Pickett, about the true quality, safety, and reliability of its laminate wood flooring products manufactured in China.

228.   Defendant's deceptive practices significantly impact the public since its laminate wood flooring products manufactured in China pose an unreasonable risk of harm to Plaintiff Don Pickett and the  other members of the  Pennsylvania  Statewide Class, because, among other things, the products emit dangerous and unlawful levels of formaldehyde.  The public interest is also affected because Plaintiff  Don Pickett was injured in exactly the same way as numerous other members of the  Pennsylvania Statewide Class who purchased laminate wood flooring products as a result of Defendant's deceptive acts.

229.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business.  Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated in the

State of  Pennsylvania.

230.   Plaintiff  Don Pickett and the other members of the  Pennsylvania Statewide Class suffered an ascertainable loss of money or property as a result of Defendant's

231.   Pursuant to 73 P.S. § 201-9.2, Plaintiff Don Pickett and the other members of the  Pennsylvania Statewide Class seek to recover either their actual damages or one hundred dollars ($100.00), whichever is greater, together with trebling of actual damages, attorneys' fees, expenses and costs, as well as any and all other items of damage and equitable relief available.

## FIFTEENTH CLAIM FOR RELIEF
### Breach of Express Warranty
### (Brought on behalf of the  Pennsylvania Statewide Class against Defendant)

232.   Plaintiff Don Pickett hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

233.   Plaintiff Don Pickett brings this Claim on behalf of the  Pennsylvania Statewide Class.

234.   Throughout the Class Period, Defendant has expressly warranted that its laminate wood flooring products comply with CARB formaldehyde standards and all other applicable laws and regulations.

235.   Defendant's express warranty that its laminate wood flooring products comply with the CARB standards appears on every package of laminate wood flooring Defendant sells or has sold in  Pennsylvania, including to Plaintiff Don Pickett  and the other members of the  Pennsylvania Statewide Class.  This express warranty also appears on Defendant's website, product invoices, and instruction materials.

236.   Defendant's warranties became part of the basis of the bargain in selling laminate wood flooring products to Plaintiff Don Pickett and the other members of the Pennsylvania Statewide Class.

237.   Defendant breached these express warranties by selling, and/or distributing the laminate wood flooring products, which fail to comply with CARB standards.

238.   Plaintiff  Don Pickett  and the other members of the  Pennsylvania Statewide Class paid money for the laminate wood flooring and paid to have the flooring installed in their homes, work, and other spaces.  However, Plaintiff  Don Pickett  and the other members of the  Pennsylvania  Statewide Class did not obtain the full value of the advertised products.  If Plaintiff Don Pickett and the other members of the  Pennsylvania Statewide Class had known the true nature of Defendant's laminate wood flooring products, including, but not limited to, that the product emitted dangerous and unlawful levels of formaldehyde, they would not have purchased the products.

239.   As a result of this breach, Plaintiff  Don Pickett  and the other members of the  Pennsylvania Statewide Class suffered injury and deserve to be compensated for the damages they suffered.

240.   Plaintiff  Don Pickett  and the other members of the  Pennsylvania Statewide Class are therefore entitled to recover compensatory damages, and other relief as specifically prayed herein.

## SIXTEENTH CLAIM FOR RELIEF
### Fraudulent Concealment
### (Brought on behalf of the  Pennsylvania Statewide Class against Defendant)

241.   Plaintiff Don Pickett hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

242.   Plaintiff  Don Pickett brings this Claim on behalf of the  Pennsylvania Statewide Class.

243.   Defendant intentionally concealed the nature of its laminate wood flooring products manufactured in China, and the above-described material safety information, or acted with reckless disregard for the truth, and denied Plaintiff Don Pickett and other members of the  Pennsylvania Statewide Class information that is highly relevant to their purchasing decision concerning the laminate wood flooring products.

244.   Through advertisements and other forms of communication, Defendant, represented that its laminate wood flooring products manufactured in China comply with CARB standards for formaldehyde emissions, when they fail to meet these

standards; represented that the laminate wood flooring products have been certified by independent entities to comply with CARB formaldehyde standards; and, failed to disclose to consumers that the flooring products emit formaldehyde at dangerous and unlawful levels, posing a serious health risk to consumers.

245.   Defendant knew these representations were false when made.

246.   Plaintiff Don Pickett  and other members of the  Pennsylvania Statewide Class were unaware that Defendant's representations were false.

247.   The laminate wood flooring products purchased by Plaintiff  Don Pickett and other members of the  Pennsylvania Statewide Class were, in fact, defective, unsafe, and unreliable, because, among other things, the products emit formaldehyde at dangerous and unlawful levels, posing a serious health risk to consumers.

248.   Plaintiff Don Pickett and other members of the  Pennsylvania  Statewide Class reasonably relied upon Defendant to disclose the dangerous and unlawful nature of its laminate wood flooring products, as was their right.

249.   The aforementioned concealment was material because had it been disclosed, Plaintiff  Don Pickett  and other members of the  Pennsylvania Statewide Class would not have bought the products.

250.   The aforementioned representations, omissions, and concealment were material because they were facts typically relied upon by a person purchasing laminate wood flooring products.

251.   As a proximate result of Defendant's concealment, Plaintiff Don Pickett and other members of the  Pennsylvania Statewide Class have been injured in an amount to be proven at trial.

### SEVENTEENTH CLAIM FOR RELIEF
**Unjust Enrichment**
**(Brought on behalf of the  Pennsylvania Statewide Class against Defendant)**

252.   Plaintiff  Don Pickett hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

253.   Plaintiff  Don Pickett brings this Claim on behalf of the  Pennsylvania

Statewide Class.

254.   Defendant profited unjustly from the sale of its laminate wood flooring products manufactured in China as a result of concealing its knowledge that its laminate wood flooring products did not comply with CARB standards for formaldehyde emissions; concealing its knowledge that its laminate wood flooring products manufactured in China had not been certified by independent entities to comply with CARB formaldehyde standards; and, by failing to disclose that its laminate wood flooring products manufactured in China emit formaldehyde at dangerous and unlawful levels, posing a serious health risk to consumers.

255.   As a proximate result of its wrongful acts and omissions described herein, and as a result of its ill-gotten benefits and profits, Defendant has been unjustly enriched at the expense of Plaintiff  Don Pickett and the other members of the  Pennsylvania Statewide Class.

256.   The circumstances as described herein are such that it would be inequitable for Defendant to retain these ill-gotten benefits and profits without paying the value thereof to Plaintiff Don Pickett  and the other members of the  Pennsylvania Statewide Class.

257.   Plaintiff Don Pickett and the other members of the  Pennsylvania Statewide Class are entitled to restitution of the amount of Defendant's ill-gotten gains, benefits and profits, including interest, resulting from its unlawful, unjust and inequitable conduct, as described above.

258.   Accordingly, Plaintiff Don Pickett and the other members of the Pennsylvania Statewide Class seek an order establishing Defendant as constructive trustee of the gains, benefits and profits that served to unjustly enrich it, together with interest during the period in which Defendant has retained such benefits and profits, and requiring Defendant to disgorge those profits to Plaintiff  Don Pickett  and the other members of the  Pennsylvania Statewide Class in a manner to be determined by the Court.

## EIGHTEENTH CLAIM FOR RELIEF
### Violation of the Florida Deceptive and Unfair Trade Practices Act
### Fla. Stat. § 501.201, *et seq.*
### (Brought on behalf of the  Florida Statewide Class against Defendant)

259.   Plaintiff  Eli Adam hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

260.   Plaintiff  Eli Adam brings this Claim on behalf of the  Florida Statewide Class.

261.   Florida's Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

262.   Plaintiff  Eli Adam and the other members of the  Florida Statewide Class are "[c]onsumer[s]" within the meaning of Fla. Stat. § 501.204(7), who purchased Defendant's laminate wood flooring product manufactured in China.

263.   In the course of Defendant's business, it willfully failed to disclose and actively concealed the fact that its laminate wood flooring manufactured in China does not comply with CARB standards for formaldehyde emissions and, in fact, emit formaldehyde at dangerous and unlawful levels, as described herein.  Accordingly, Defendant engaged unconscionable acts or practices and deceptive acts or practices, in violation of Fla. Stat. § 501.204(1).

264.   Defendant knew that its laminate wood flooring manufactured in China did not comply with CARB standards for formaldehyde emissions, that its laminate wood flooring products had not been certified by independent entities to comply with CARB formaldehyde standards, and, that its flooring products emit formaldehyde at dangerous and unlawful levels, posing a serious health risk to consumers.  Nevertheless, Defendant failed to adequately disclose and remedy this issue.

265.   Defendant owed Plaintiff  Eli Adam and the other members of the  Florida Statewide Class a duty to disclose the defective nature of its laminate wood flooring products manufactured in China because Defendant: possessed exclusive knowledge of

the defects rendering its laminate wood flooring products inherently more dangerous and unreliable than similar laminate wood flooring products; intentionally concealed the defects in its laminate wood flooring products manufactured in China from Plaintiff Florida and the other members of the  Florida Statewide Class; and/or made incomplete representations about the quality, safety, and reliability of its laminate wood flooring products manufactured in China, while purposefully withholding material facts from Plaintiff  Eli Adam and the other members of the Florida Statewide Class that contradicted those representations.

266.   The acts, omissions, and practices alleged herein also constitute unfair business practices in that Defendant's conduct is immoral, unscrupulous, and offends public policy by seeking to profit from Chinese-made laminate flooring products that emit dangerous levels of formaldehyde in violation of Florida law.

267.   There were reasonable alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

268.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff  Eli Adam, about the true quality, safety, and reliability of its laminate wood flooring products manufactured in China.

269.   Defendant's deceptive practices significantly impact the public since its laminate wood flooring products manufactured in China pose an unreasonable risk of serious bodily injury to Plaintiff  Eli Adam and the other members of the  Florida Statewide Class because, among other things, the products emit dangerous and unlawful levels of formaldehyde.  The public interest is also affected because Plaintiff  Eli Adam was injured in exactly the same way as numerous other members of the  Florida Statewide Class who purchased laminate wood flooring products as a result of Defendant's deceptive acts.

270.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business.  Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated in the

State of  Florida.

271.   A reasonable consumer would consider the unreasonable risk of serious bodily injury posed by Defendant's laminate wood flooring products manufactured in China important when selecting the product for purchase.

272.   When Plaintiff  Eli Adam and the other members of the  Florida Statewide Class purchased Defendant's laminate wood flooring product, they reasonably expected, among other things, that the products would not emit dangerous and unlawful levels of formaldehyde.

273.   Plaintiff  Eli Adam and the other members of the  Florida  Statewide Class have suffered injury in fact, actual damages, and have lost money as a result of Defendant's unlawful, unfair, and deceptive practices.

274.   Plaintiff Eli Adam and the other members of the Florida Statewide Class also seek restitution and disgorgement of all money obtained from Plaintiff Eli Adam and the members of the Florida Statewide Class collected as a result of the unfair competition and/or unconscionable, unfair, or deceptive practices, an injunction prohibiting Defendants from continuing such practices, corrective advertising (including providing notification of the product's health risks), and all other relief the Court deems appropriate.

## NINETEENTH CLAIM FOR RELIEF
### Breach of Express Warranty
### (Brought on behalf of the  Florida Statewide Class against Defendant)

275.   Plaintiff Eli Adam hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

276.   Plaintiff Eli Adam brings this Claim on behalf of the  Florida Statewide Class.

277.   Throughout the Class Period, Defendant has expressly warranted that its laminate wood flooring products comply with CARB formaldehyde standards and all other applicable laws and regulations.

278.   Defendant's express warranty that its laminate wood flooring products comply with the CARB standards appears on every package of laminate wood flooring Defendant sells or has sold in Florida, including to Plaintiff Eli Adam and the other members of the  Florida Statewide Class.  This express warranty also appears on Defendant's website, product invoices, and instruction materials.

279.   Defendant's warranties became part of the basis of the bargain in selling laminate wood flooring products to Plaintiff Eli Adam and the other members of the Florida Statewide Class.

280.   Defendant breached these express warranties by selling, and/or distributing the laminate wood flooring products, which fail to comply with CARB standards.

281.   Plaintiff  Eli Adam  and the other members of the Florida  Statewide Class paid money for the laminate wood flooring and paid to have the flooring installed in their homes, work, and other spaces.  However, Plaintiff  Eli Adam  and the other members of the Florida  Statewide Class did not obtain the full value of the advertised products.  If Plaintiff Eli Adam and the other members of the Florida Statewide Class had known the true nature of Defendant's laminate wood flooring products, including, but not limited to, that the product emitted dangerous and unlawful levels of formaldehyde, they would not have purchased the products.

282.   As a result of this breach, Plaintiff  Eli Adam  and the other members of the Florida Statewide Class suffered injury and deserve to be compensated for the damages they suffered.

283.   Plaintiff  Eli Adam  and the other members of the Florida Statewide Class are therefore entitled to recover compensatory damages, and other relief as specifically prayed herein.

**TWENTIETH CLAIM FOR RELIEF**
**Fraudulent Concealment**
**(Brought on behalf of the Florida Statewide Class against Defendant)**

284.   Plaintiff Eli Adam hereby incorporates by reference the allegations

contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

285.   Plaintiff  Eli Adam brings this Claim on behalf of the Florida Statewide Class.

286.   Defendant intentionally concealed the nature of its laminate wood flooring products manufactured in China, and the above-described material safety information, or acted with reckless disregard for the truth, and denied Plaintiff Eli Adam and other members of the Florida Statewide Class information that is highly relevant to their purchasing decision concerning the laminate wood flooring products.

287.   Through advertisements and other forms of communication, Defendant, represented that its laminate wood flooring products manufactured in China comply with CARB standards for formaldehyde emissions, when they fail to meet these standards; represented that the laminate wood flooring products have been certified by independent entities to comply with CARB formaldehyde standards; and, failed to disclose to consumers that the flooring products emit formaldehyde at dangerous and unlawful levels, posing a serious health risk to consumers.

288.   Defendant knew these representations were false when made.

289.   Plaintiff Eli Adam  and other members of the Florida Statewide Class were unaware that Defendant's representations were false.

290.   The laminate wood flooring products purchased by Plaintiff  Eli Adam and other members of the Florida Statewide Class were, in fact, defective, unsafe, and unreliable, because, among other things, the products emit formaldehyde at dangerous and unlawful levels, posing a serious health risk to consumers.

291.   Plaintiff Eli Adam and other members of the Florida  Statewide Class reasonably relied upon Defendant to disclose the dangerous and unlawful nature of its laminate wood flooring products, as was their right.

292.   The aforementioned concealment was material because had it been disclosed, Plaintiff  Eli Adam  and other members of the Florida Statewide Class would not have bought the products.

293.   The aforementioned representations, omissions, and concealment were material because they were facts typically relied upon by a person purchasing laminate wood flooring products.

294.   As a proximate result of Defendant's concealment, Plaintiff Eli Adam and other members of the Florida  Statewide Class have been injured in an amount to be proven at trial.

## TWENTY-FIRST CLAIM FOR RELIEF
### Unjust Enrichment
### (Brought on behalf of the Florida Statewide Class against Defendant)

295.   Plaintiff  Eli Adam hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

296.   Plaintiff  Eli Adam brings this Claim on behalf of the Florida Statewide Class.

297.   Defendant profited unjustly from the sale of its laminate wood flooring products manufactured in China as a result of concealing its knowledge that its laminate wood flooring products did not comply with CARB standards for formaldehyde emissions; concealing its knowledge that its laminate wood flooring products manufactured in China had not been certified by independent entities to comply with CARB formaldehyde standards; and, by failing to disclose that its laminate wood flooring products manufactured in China emit formaldehyde at dangerous and unlawful levels, posing a serious health risk to consumers.

298.   As a proximate result of its wrongful acts and omissions described herein, and as a result of its ill-gotten benefits and profits, Defendant has been unjustly enriched at the expense of Plaintiff  Eli Adam and the other members of the Florida Statewide Class.

299.   The circumstances as described herein are such that it would be inequitable for Defendant to retain these ill-gotten benefits and profits without paying the value thereof to Plaintiff  Eli Adam  and the other members of the Florida Statewide Class.

300. Plaintiff Eli Adam and the other members of the Florida Statewide Class are entitled to restitution of the amount of Defendant's ill-gotten gains, benefits and profits, including interest, resulting from its unlawful, unjust and inequitable conduct, as described above.

301. Accordingly, Plaintiff Eli Adam and the other members of the Florida Statewide Class seek an order establishing Defendant as constructive trustee of the gains, benefits and profits that served to unjustly enrich it, together with interest during the period in which Defendant has retained such benefits and profits, and requiring Defendant to disgorge those profits to Plaintiff Eli Adam and the other members of the Florida Statewide Class in a manner to be determined by the Court.

## TWENTY-SECOND CLAIM FOR RELIEF
### Violation of the South Carolina Unfair Trade Practices Act
### S.C. Code Ann. § 39-5-10, *et seq.*
### (Brought on behalf of the South Carolina Statewide Class against Defendant)

302. Plaintiff Helyn Palmer hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

303. Plaintiff Helyn Palmer brings this Claim on behalf of the South Carolina Statewide Class.

304. Defendant is a "person" within the meaning of S.C. Code § 39-5-10(a).

305. Defendant's sale of laminate wood flooring product manufactured in China to Plaintiff Helyn Palmer and other members of the South Carolina Statewide Class occurred in the conduct of "trade" and "commerce" within the meaning of S.C. Code § 39-5-10(b).

306. Plaintiff Helyn Palmer and other members of the South Carolina Statewide Class have been injured by Defendant's unfair and/or deceptive acts and/or practices in violation of S.C. Code § 39-5-20, including, among other things:

    a. Manufacturing, selling and/or distributing laminate wood flooring that emits dangerous and unlawful levels of formaldehyde.

    b. Manufacturing, selling and/or distributing laminate wood flooring

that exceeds the CARB formaldehyde standards despite its repeated statements to the contrary;

        c.      Manufacturing, importing, selling, and/or distributing flooring that fails to comply with all applicable laws and regulations;

        d.      Making false and misleading statements and omitting to disclose material information regarding its laminate wood flooring products manufactured in China, including, but not limited to, the levels of formaldehyde emissions and compliance with CARB formaldehyde standards;

        e.      Refusing to properly repair or replace the defective flooring as described herein.

307.   Defendant willfully engaged in the deceptive acts and/or practices described above and knew or should have known that its conduct was a violation of § 39-5-20.

308.   As a direct and proximate result of Defendant's acts described above, Plaintiff Helyn Palmer and other members of the South Carolina Statewide Class paid more for Defendant's laminate wood flooring products than they would have and/or purchased products that they would not have purchased but for Defendant's deceptive conduct, and are entitled to damages, among other relief.

## TWENTY-THIRD CLAIM FOR RELIEF
### Breach of Express Warranty
### (Brought on behalf of the South Carolina Statewide Class against Defendant)

309.   Plaintiff Helyn Palmer hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

310.   Plaintiff Helyn Palmer brings this Claim on behalf of the South Carolina Statewide Class.

311.   Throughout the Class Period, Defendant has expressly warranted that its laminate wood flooring products comply with CARB formaldehyde standards and all other applicable laws and regulations.

312.   Defendant's express warranty that its laminate wood flooring products comply with the CARB standards appears on every package of laminate wood flooring Defendant sells or has sold in South Carolina, including to Plaintiff Helyn Palmer and the other members of the South Carolina Statewide Class.  This express warranty also appears on Defendant's website, product invoices, and instruction materials.

313.   Defendant's warranties became part of the basis of the bargain in selling laminate wood flooring products to Plaintiff Helyn Palmer and the other members of the South Carolina Statewide Class.

314.   Defendant breached these express warranties by selling, and/or distributing the laminate wood flooring products, which fail to comply with CARB standards.

315.   Plaintiff Helyn Palmer and the other members of the South Carolina Statewide Class paid money for the laminate wood flooring and paid to have the flooring installed in their homes, work, and other spaces.  However, Plaintiff Helyn Palmer and the other members of the South Carolina Statewide Class did not obtain the full value of the advertised products.  If Plaintiff Helyn Palmer and the other members of the South Carolina Statewide Class had known the true nature of Defendant's laminate wood flooring products, including, but not limited to, that the product emitted dangerous and unlawful levels of formaldehyde, they would not have purchased the products.

316.   As a result of this breach, Plaintiff Helyn Palmer and the other members of the South Carolina Statewide Class suffered injury and deserve to be compensated for the damages they suffered.

317.   Plaintiff Helyn Palmer and the other members of the South Carolina Statewide Class are therefore entitled to recover compensatory damages, and other relief as specifically prayed herein.

### TWENTY-FOURTH CLAIM FOR RELIEF
**Fraudulent Concealment**
**(Brought on behalf of the South Carolina Statewide Class against Defendant)**

318.   Plaintiff Helyn Palmer hereby incorporates by reference the allegations

contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

319.   Plaintiff Helyn Palmer brings this Claim on behalf of the South Carolina Statewide Class.

320.   Defendant intentionally concealed the nature of its laminate wood flooring products manufactured in China, and the above-described material safety information, or acted with reckless disregard for the truth, and denied Plaintiff Helyn Palmer and other members of the South Carolina Statewide Class information that is highly relevant to their purchasing decision concerning the laminate wood flooring products.

321.   Through advertisements and other forms of communication, Defendant, represented that its laminate wood flooring products manufactured in China comply with CARB standards for formaldehyde emissions, when they fail to meet these standards; represented that the laminate wood flooring products have been certified by independent entities to comply with CARB formaldehyde standards; and, failed to disclose to consumers that the flooring products emit formaldehyde at dangerous and unlawful levels, posing a serious health risk to consumers.

322.   Defendant knew these representations were false when made.

323.   Plaintiff Helyn Palmer and other members of the South Carolina Statewide Class were unaware that Defendant's representations were false.

324.   The laminate wood flooring products purchased by Plaintiff Helyn Palmer and other members of the South Carolina Statewide Class were, in fact, defective, unsafe, and unreliable, because, among other things, the product emits formaldehyde at dangerous and unlawful levels, posing a serious health risk to consumers.

325.   Plaintiff Helyn Palmer and other members of the South Carolina Statewide Class reasonably relied upon Defendant to disclose the dangerous and unlawful nature of its laminate wood flooring products, as was their right.

326.   The aforementioned concealment was material because had it been disclosed, Plaintiff Helyn Palmer and other members of the South Carolina Statewide Class would not have bought the products.

327.   The aforementioned representations, omissions, and concealment were material because they were facts typically relied upon by a person purchasing laminate wood flooring products.

328.   As a proximate result of Defendant's concealment, Plaintiff Helyn Palmer and other members of the South Carolina Statewide Class have been injured in an amount to be proven at trial.

**TWENTY-FIFTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(Brought on behalf of the South Carolina Statewide Class against Defendant)**

329.   Plaintiff Helyn Palmer hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

330.   Plaintiff Helyn Palmer brings this Claim on behalf of the South Carolina Statewide Class.

331.   Defendant profited unjustly from the sale of its laminate wood flooring products manufactured in China as a result of concealing its knowledge that its laminate wood flooring products did not comply with CARB standards for formaldehyde emissions; concealing its knowledge that its laminate wood flooring products manufactured in China had not been certified by independent entities to comply with CARB formaldehyde standards; and, by failing to disclose that its laminate wood flooring products manufactured in China emit formaldehyde at dangerous and unlawful levels, posing a serious health risk to consumers.

332.   As a proximate result of its wrongful acts and omissions described herein, and as a result of its ill-gotten benefits and profits, Defendant has been unjustly enriched at the expense of Plaintiff Helyn Palmer and the other members of the South Carolina State Class.

333.   The circumstances as described herein are such that it would be inequitable for Defendant to retain these ill-gotten benefits and profits without paying the value thereof to Plaintiff Helyn Palmer and the other members of the South Carolina State Class.

334.   Plaintiff Helyn Palmer and the other members of the South Carolina State Class are entitled to restitution of the amount of Defendant's ill-gotten gains, benefits and profits, including interest, resulting from its unlawful, unjust and inequitable conduct, as described above.

335.   Accordingly, Plaintiff Helyn Palmer and the other members of the South Carolina State Class seek an order establishing Defendant as constructive trustee of the gains, benefits and profits that served to unjustly enrich it, together with interest during the period in which Defendant has retained such benefits and profits, and requiring Defendant to disgorge those profits to Plaintiff Helyn Palmer and the other members of the South Carolina State Class in a manner to be determined by the Court.

<u>TWENTY-SIXTH CLAIM FOR RELIEF</u>
**Violation of the West Virginia Consumer Credit and Protection Act**
**W. Va. Code § 46A-1-101, *et seq*.**
**(Brought on behalf of the West Virginia Statewide Class against Defendant)**

336.   Plaintiff Cyndy Thompson hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

337.   Plaintiff Cyndy Thompson brings this Claim on behalf of the West Virginia Statewide Class.

338.   Plaintiff Cyndy Thompson is a "consumer" under W. Va. Code § 46A-6-102.

339.   Defendant's sale of laminate wood flooring product manufactured in China to Plaintiff Cyndy Thompson and other members of the West Virginia Statewide Class occurred in the conduct of "trade" and "commerce" within the meaning of W. Va. Code § 46A-6-102.

340.   Defendant is a "person" under W. Va. Code § 46A-1-102 (31).

341.   By willfully failing to disclose and actively concealing the fact that its laminate wood flooring products emits dangerous and unlawful levels of formaldehyde, which poses a serious health risk to consumers, Defendant engaged in deceptive business practices prohibited by W. Va. Code § 46A-1-101, *et seq*., including:

   a. Representing that its laminate wood flooring products have characteristics, uses, benefits, and qualities which they do not have;

   b. Representing that its laminate wood flooring products are of a particular standard and quality when they are not;

   c. Advertising its laminate wood flooring products with the intent not to sell them as advertised; and

   d. Representing that the subject of a transaction involving its laminate wood flooring products has been supplied in accordance with a previous representation when it has not.

342. Defendant made numerous material statements about the safety and reliability of its laminate wood flooring products manufactured in China that were false or misleading.

343. Each of these statements contributed to the deceptive context of Defendant's unlawful advertising and representations as a whole.

344. Defendant knew that its laminate wood flooring products emitted dangerous levels of formaldehyde, which poses a serious health risk to consumers, and failed to comply with CARB's strict formaldehyde emission standards.  Nevertheless, Defendant failed to adequately disclose and remedy this issue.

345. Defendant owed Plaintiff Cyndy Thompson and the other members of the West Virginia Statewide Class a duty to disclose material information concerning its laminate wood flooring products manufactured in China, including, its emission of formaldehyde at dangerous and unlawful levels, because Defendant:

   a. Possessed exclusive knowledge rendering the laminate wood flooring products inherently more dangerous than similar laminate wood floor products;

   b. Intentionally concealed material information concerning its laminate wood flooring products from Plaintiff Cyndy Thompson and the other members of the West Virginia Statewide Class; and/or

   c. Made incomplete representations about the quality, safety, and

reliability of its laminate wood flooring products, while purposefully withholding material facts from Plaintiff Cyndy Thompson and the other members of the West Virginia Statewide Class that contradicted those representations.

346.   Defendant's laminate wood flooring products manufactured in China pose an unreasonable risk of death or serious bodily injury to Plaintiff Cyndy Thompson and the other members of the West Virginia Statewide Class, because it emits dangerous and unlawful levels for formaldehyde.

347.   A reasonable consumer would consider the unreasonable risk of serious bodily injury posed by Defendant's laminate wood flooring products manufactured in China important in selecting the product.

348.   When Plaintiff Cyndy Thompson and the other members of the West Virginia Statewide Class purchased their laminate wood flooring products from Defendant, they reasonably expected that it would be safe, and would not emit dangerous and unlawful levels of formaldehyde.

349.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Cyndy Thompson and the other members of the West Virginia Statewide Class, about the true quality, safety, and reliability of its laminate wood flooring product manufactured in China.

350.   As a result of Defendant's unfair or deceptive acts or practices, Plaintiff Cyndy Thompson and the other members of the West Virginia Statewide Class have suffered ascertainable loss.  If Defendant's conduct is not stopped, Plaintiff Cyndy Thompson and the other members of the West Virginia Statewide Class will continue to be injured.

351.   Plaintiff Cyndy Thompson and the other members of the West Virginia Statewide Class were injured as a result of Defendant's deceptive trade practices.

352.   Plaintiff Cyndy Thompson and the other members of the West Virginia Statewide Class risk irreparable injury as a result of Defendant's acts and material omissions, and these violations of W. Va. Code § 46A-1-101, *et seq*. present a

continuing risk to Plaintiff Cyndy Thompson as well as the general public.

353. Pursuant to W. Va. Code § 46A-6-106, Plaintiff Cyndy Thompson seeks monetary relief against Defendant measured as the greater of (1) actual damages in an amount to be determined at trial; or (2) statutory damages in the amount of $200 per violation for Plaintiff Cyndy Thompson and each member of the West Virginia Statewide Class.

354. Plaintiff Cyndy Thompson and other members of the West Virginia Statewide Class seek punitive damages against Defendant, because Defendant willfully, wantonly, fraudulently, and maliciously failed to disclose and actively concealed the fact that all of its laminate wood flooring products manufactured in China emitted dangerous and unlawful levels of formaldehyde, thereby subjecting Plaintiff Cyndy Thompson to cruel and unjust hardship as a result. Defendant's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

355. Plaintiff Cyndy Thompson further seeks an order enjoining Defendant's unfair or deceptive acts or practices, restitution, punitive damages, costs, and attorneys' fees under W. Va. Code § 46A-5-101, *et seq.* and any other just and proper relief available under the West Virginia Consumer Credit and Protection Act.

## TWENTY-SEVENTH CLAIM FOR RELIEF
### Breach of Express Warranty
### (Brought on behalf of the West Virginia Statewide Class against Defendant)

356. Plaintiff Cyndy Thompson hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

357. Plaintiff Cyndy Thompson brings this Claim on behalf of the West Virginia Statewide Class.

358. Throughout the Class Period, Defendant has expressly warranted that its laminate wood flooring products comply with CARB formaldehyde standards and all other applicable laws and regulations.

359. Defendant's express warranty that its laminate wood flooring products comply with the CARB standards appears on every package of laminate wood flooring

Defendant sells or has sold in West Virginia, including to Plaintiff Cyndy Thompson and the other members of the West Virginia Statewide Class.  This express warranty also appears on Defendant's website, product invoices, and instruction materials.

360.   Defendant's warranties became part of the basis of the bargain in selling laminate wood flooring products Plaintiff Cyndy Thompson and the other members of the West Virginia Statewide Class.

361.   Defendant breached these express warranties by selling, and/or distributing the laminate wood flooring products, which fail to comply with CARB standards.

362.   Plaintiff Cyndy Thompson and the other members of the West Virginia Statewide Class paid money for the laminate wood flooring and paid to have the flooring installed in their homes, work, and other spaces.  However, Plaintiff Cyndy Thompson and the other members of the West Virginia Statewide Class did not obtain the full value of the advertised products.  If Plaintiff Cyndy Thompson and the other members of the West Virginia Statewide Class had known the true nature of Defendant's laminate wood flooring products, including, but not limited to, that the product emitted dangerous and unlawful levels of formaldehyde, they would not have purchased the products.

363.   As a result of this breach, Plaintiff Cyndy Thompson and the other members of the West Virginia Statewide Class suffered injury and deserve to be compensated for the damages they suffered.

364.   Plaintiff Cyndy Thompson and the other members of the West Virginia Statewide Class are therefore entitled to recover compensatory damages, and other relief as specifically prayed herein.

### TWENTY-EIGHTH CLAIM FOR RELIEF
**Fraudulent Concealment**
**(Brought on behalf of the West Virginia Statewide Class against Defendant)**

365.   Plaintiff Cyndy Thompson hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

366.   Plaintiff Cyndy Thompson brings this Claim on behalf of the West Virginia

Statewide Class.

367.   Defendant intentionally concealed the nature of its laminate wood flooring products manufactured in China, and the above-described material safety information, or acted with reckless disregard for the truth, and denied Plaintiff Cyndy Thompson and other members of the West Virginia Statewide Class information that is highly relevant to their purchasing decision concerning the laminate wood flooring products.

368.   Through advertisements and other forms of communication, Defendant, represented that its laminate wood flooring products manufactured in China comply with CARB standards for formaldehyde emissions, when they fail to meet these standards; represented that the laminate wood flooring products have been certified by independent entities to comply with CARB formaldehyde standards; and, failed to disclose to consumers that the flooring products emit formaldehyde at dangerous and unlawful levels, posing a serious health risk to consumers.

369.   Defendant knew these representations were false when made.

370.   Plaintiff Cyndy Thompson and other members of the West Virginia Statewide Class were unaware that Defendant's representations were false.

371.   The laminate wood flooring products purchased by Plaintiff Cyndy Thompson and other members of the West Virginia Statewide Class were, in fact, defective, unsafe, and unreliable, because, among other things, the products emit formaldehyde at dangerous and unlawful levels, posing a serious health risk to consumers.

372.   Plaintiff Cyndy Thompson and other members of the West Virginia Statewide Class reasonably relied upon Defendant to disclose the dangerous and unlawful nature of its laminate wood flooring products, as was their right.

373.   The aforementioned concealment was material because had it been disclosed, Plaintiff Cyndy Thompson and other members of the West Virginia Statewide Class would not have bought the products.

374.   The aforementioned representations, omissions, and concealment were

material because they were facts typically relied upon by a person purchasing laminate wood flooring products.

375.    As a proximate result of Defendant's concealment, Plaintiff Cyndy Thompson and other members of the West Virginia Statewide Class have been injured in an amount to be proven at trial.

## TWENTY-NINTH CLAIM FOR RELIEF
### Unjust Enrichment
### (Brought on behalf of the West Virginia Statewide Class against Defendant)

376.    Plaintiff Cyndy Thompson hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

377.    Plaintiff Cyndy Thompson brings this Claim on behalf of the West Virginia Statewide Class.

378.    Defendant profited unjustly from the sale of its laminate wood flooring products manufactured in China as a result of concealing its knowledge that its laminate wood flooring products did not comply with CARB standards for formaldehyde emissions; concealing its knowledge that its laminate wood flooring products manufactured in China had not been certified by independent entities to comply with CARB formaldehyde standards; and, by failing to disclose that its laminate wood flooring products manufactured in China emit formaldehyde at dangerous and unlawful levels, posing a serious health risk to consumers.

379.    As a proximate result of its wrongful acts and omissions described herein, and as a result of its ill-gotten benefits and profits, Defendant has been unjustly enriched at the expense of Plaintiff Cyndy Thompson and the other members of the West Virginia State Class.

380.    The circumstances as described herein are such that it would be inequitable for Defendant to retain these ill-gotten benefits and profits without paying the value thereof to Plaintiff Cyndy Thompson and the other members of the West Virginia State Class.

381.    Plaintiff Cyndy Thompson and the other members of the West Virginia

State Class are entitled to restitution of the amount of Defendant's ill-gotten gains, benefits and profits, including interest, resulting from its unlawful, unjust and inequitable conduct, as described above.

382.   Accordingly, Plaintiff Cyndy Thompson and the other members of the West Virginia State Class seek an order establishing Defendant as constructive trustee of the gains, benefits and profits that served to unjustly enrich it, together with interest during the period in which Defendant has retained such benefits and profits, and requiring Defendant to disgorge those profits to Plaintiff Cyndy Thompson and the other members of the West Virginia State Class in a manner to be determined by the Court.

## PRAYER FOR RELIEF

WHEREFORE**,** Plaintiffs, on behalf of themselves and all Class Members, pray for judgment as follows:

A.   An order certifying the proposed Classes designating Plaintiffs as the named representatives of the Classes, and designating the undersigned as Class Counsel;

B.   An order enjoining Defendant to desist from continuing to distribute and/or sell laminate flooring products that violate the CARB standards;

C.   An award to Plaintiffs and Class Members of compensatory, exemplary, and statutory penalties, damages, including interest, in an amount to be proven at trial;

D.   An order requiring Defendant to notify all members of the Class of the alleged omissions and active concealment of material facts alleged herein, and to otherwise engage in corrective advertising;

E.   An award of restitution and disgorgement of Defendant's revenues and profits to Plaintiffs and members of the Class;

F.   An award of punitive damages in an amount to be proven at trial;

G.   An award of attorneys' fees and costs, as allowed by law;

H.   An award of pre-judgment and post-judgment interest, as provided by law; and

I.      Any other relief that the Court deems appropriate and just under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiffs request trial by jury on all issues so triable.

March 12, 2015                          Respectfully submitted,

                                        BARON & BUDD, P.C.


                                        /s/  Paul Scott Summy
                        By:             _____
                                        Paul Scott Summy (Texas Bar No. 19507500)
                                        ssummy@baronbudd.com
                                        Cary McDougal (Texas Bar No. 13569600)
                                        cmcdougal@baronbudd.com
                                        Carla Burke (Texas Bar No. 24012490)
                                        cburke@baronbudd.com
                                        BARON & BUDD, P.C.
                                        3102 Oak Lawn Avenue, Suite 1100
                                        Dallas, TX  75219
                                        Tel:  (214) 521-3605
                                        Fax:  (214) 520-1181

                                        Roland Tellis (*pro hac vice* to be filed)
                                        rtellis@baronbudd.com
                                        Mark Pifko (*pro hac vice* to be filed)
                                        mpifko@baronbudd.com
                                        David Fernandes (*pro hac vice* to be filed)
                                        dfernandes@baronbudd.com
                                        BARON & BUDD, P.C.
                                        15910 Ventura Boulevard, Suite 1600
                                        Encino, CA  91436
                                        Tel:  (818) 839-2333
                                        Fax:  (818) 986-9698

J. Burton LeBlanc (Texas Bar No. 00784456)
bleblanc@baronbudd.com
BARON & BUDD, P.C.
2600 CitiPlace Drive
Baton Rouge, Louisiana
Tel:  (225) 927-5441
Fax:  (225) 927-5449

**Attorneys for Plaintiffs
KEVIN PARNELLA, JOAN KAHN,
SHAWN BURKE,  DON PICKETT,
ELI ADAM, HELYN PALMER,
CYNDY THOMPSON and all others
similarly situated**